## EDWIN A. BUCK, TRUSTEE, *vs.* OLIVER D. SEYMOUR.

A railroad company under authority of its charter issued bonds and secured them by a mortgage to the treasurer of the state as a trustee for the bond-holders, of "all and singular the railways, rails, bridges, station houses, depots, shops, buildings, cars, engines, machinery, materials, and all property real or personal now belonging or that may at any time hereafter belong to said company and be used as a part of said railroad or be appurtenant thereto or necessary for the construction or operation thereof, and also all the rights and franchises of said company, with the tolls, income and profits thereof." The charter authorized the company to raise money in this manner for the purpose "of providing for the construction, equipment and maintenance of its road." Held—

1. That the mortgage created a valid lien upon property afterwards procured by the company for the use of the road.
2. That the property was to be regarded as "necessary" for the operation of the road if it was such as the company in the reasonable exercise of its discretion considered it best to procure, for the most profitable use of the road to itself and the most beneficial use of it to the public, even though the road could have been operated without it.

The property was purchased to be used upon another road of which the company took a five years' lease, and ultimately upon its own road. The company was authorized by its charter to lease any connecting road, but a question was made as to whether the leased road was a connecting one, a short connecting link being a track of another road which the leased road was using under a contract. It was found that it was essential to the prosperity of the principal road and to the convenience of the public that it should be run in connection with the leased road. Held that the intention of the company to make the first use of the property in establishing a substantially connected service over the leased road, did not prevent the attachment of the mortgage lien at the time of the purchase, even if the company had strictly no power to take the lease.

All the property of the company was surrendered by the directors to the trustee, under the provision of a general statute authorizing trustees in such a case to take possession of the mortgaged property, the surrender being without reserve and accompanied by a written declaration that they surrendered all the property covered by the mortgage. Held—

1. That such a surrender constructively included the property acquired after the date of the mortgage.
2. That a delivery of the after-acquired property for the benefit of the bond-holders created a lien in their favor upon it, even if the mortgage had not been sufficient for that purpose.

The description of the after-acquired property as "all property which may hereafter belong to said company and be used as a part of said road," held not to be too indefinite.

There is not the same necessity in such a case for a particular description of the

property as there is in that of a private person. Where a railroad company, under authority of its charter, mortgages all the property at any time held by it and used upon its road, persons dealing with it know that it has power to make such a mortgage and that all its property in use is thus mortgaged, and could not be made more secure by the most detailed description.

REPLEVIN, for sundry articles of personal property claimed by the plaintiff as a mortgagee of the Connecticut Valley Railroad Company; brought by the treasurer of the state as trustee for the bondholders secured by the mortgage. The defendant pleaded the general issue, with notice that he had attached the property as an officer and held it as such when it was taken from him upon the replevin, and demanded its return.

The property claimed in the writ was as follows: three sofas, four office desks, five ticket boxes, fifty-two chairs, five stoves with pipe, three hand trucks, thirteen lanterns, three clocks, eleven bracket lamps, three reflector lanterns, two racks with pigeon-holes, two platform scales, six hammers, thirty-eight shovels, thirty-nine iron bars, nine wrenches, sixteen cold chisels, three sledges, three adzes, three gauges, three braces and bits, three hatchets, three sets of surface boards, two levels, two hand saws, eleven switch rods, seven picks, two pairs of tongs, one hoe, one lot of oil-cans, one table, one head-light, one package of baggage checks, two cotton hooks, six hand-cars, three hand freight cars, and a lot of coal hods, zinc, plank, and old iron.

The case was tried to the court before *Martin, J.*, who found the following facts:—

The Connecticut Valley Railroad Company was incorporated in 1868, and thereafter was duly organized and proceeded to construct a railroad from a point in Hartford southward to a point in the town of Old Saybrook on Long Island Sound.

In 1873 the company issued its bonds to the amount of $1,250,000 for the completion and equipment of its road, and to secure the same executed a second mortgage (its first mortgage being for $1,000,000,) of its railroad and property to the treasurer of the state and his successors in office in trust for the holders of the bonds. The property mortgaged was thus described in the mortgage deed: "All and singular

the railways, rails, bridges, fences, station-houses, depots, shops, buildings, structures, tools, cars, engines, equipments, machinery, fuel, materials, privileges, appendages, appurtenances and property, real or personal, which now belong, or may at any time hereafter belong, to said company, and be used as a part of said railroad, or be appurtenant thereto, or necessary for the construction, operation or security thereof, and also all the rights and franchises of said company, together with the tolls, income, issues and profits thereof, and everything necessary for the completion and operation of said road."

On the 1st day of January, 1876, the company leased of the Connecticut Central Railroad Company, for the term of five years, its railroad extending from the track of the Hartford, Providence & Fishkill Railroad in East Hartford, to the Massachusetts state line in the town of Enfield in this state.

On the 19th day of November, 1875, the Valley Railroad Company obtained by contract with the trustees of the Hartford, Providence & Fishkill Railroad, the right to run trains upon the track of the last named road from the termination of its own railroad in Hartford to the track of the Central railroad in East Hartford. Under this lease the Valley Railroad Company, on the 26th day of January, 1876, commenced operating the Central railroad and the running of through trains over its own road and the Hartford, Providence & Fishkill railroad, and the Central road, and so continued until the 29th day of June, 1876.

At the time of or soon after commencing to operate the Central railroad, the Valley Railroad Company purchased most of the property mentioned in the plaintiff's declaration, and manufactured the remainder, for use upon the line of the Central railroad, and in furnishing and operating it; and placed the property upon the line of that road, where it remained and was exclusively used until taken by the attachment. The property, when so purchased or manufactured, was intended to be used on the Central railroad during the term of the lease, but ultimately for the general use of the Valley Railroad Company.

On the 29th day of June, 1876, the Valley Railroad Company surrendered its railroad and property to the plaintiff, as trustee under the mortgage, in accordance with the terms of the mortgage and the provisions of law. This was done under a vote of the directors authorizing and directing the executive committee to surrender to the trustee all the property covered by the mortgage; and the executive committee delivered to the trustee, at the time of the surrender, a written declaration, which, after referring to the mortgage, described the property surrendered as follows: "Meaning and intending to surrender to said trustee all the property, real and personal, described in said mortgage deed, dated October 1st, 1872, and given as a second mortgage upon the property of said railroad company." The plaintiff, as trustee, upon this surrender being made, took possession of the Valley railroad, and of all the property upon and along its line, and also went along the line of the Central railroad, and notified the agents upon the line of the latter road and in whose possession the property was, that henceforth they must hold the property for him as trustee, under the mortgage; and the plaintiff then made an inventory of all the property which came into his possession as trustee, and included therein the property described in the plaintiff's declaration, and lodged the same in the office of the secretary of this state, as required by law.

The plaintiff, upon taking possession of the Valley railroad, notified the Central Railroad Company that he would not operate the road under the lease, but would operate it upon certain terms, until he should receive notice to stop running trains thereon. On the 29th day of August, 1876, he was notified to and did stop running trains over that road, and has not since used or been in possession of it, and the Central railroad has ever since been operated by the Central Railroad Company. Under an arrangement between the plaintiff and the Central Railroad Company, made about the first day of October, 1876, the two railroads have since been running in connection with each other.

When the plaintiff surrendered the possession of the Cen-

tral railroad, he left upon its line at the various stations the property described in the plaintiff's declaration, pending negotiations between him and the Central Railroad Company for the operating of the road. Very soon thereafter, during the negotiations, and while the property was upon the Central road, it was attached by the Central Railroad Company in an action against the Valley Railroad Company, and afterwards, on the 27th day of December, 1877, it was attached by the defendant as the property of the Valley Railroad Company in an action against that company, in favor of Stoughton, Vinton & Co., and the attachment in favor of the Central Railroad Company was subsequently released. Previous to the bringing of this action the property was never upon the Valley railroad, but since the obtaining possession of it by the plaintiff a portion of it has been used upon the line of that road.

It was essential to the prosperity of the Valley Railroad Company and the convenience of the public, that the Valley railroad should be run in connection with the Central railroad.

Upon the foregoing facts the defendant claimed, and requested the court to hold—

1. That the mortgage did not cover, and was not a lien upon, any property of the Valley Railroad Company acquired by the company subsequent to the execution of the mortgage.

2. That the property described in the plaintiff's declaration, having been purchased for use and used on the line of the Central railroad exclusively, was not covered by and within the terms of the mortgage.

But the court overruled the claims of the defendant and found the issue for the plaintiff, and rendered judgment accordingly.

The defendant brought the record before this court by a motion in error.

*T. M. Maltbie,* with whom was *C. H. Briscoe,* for the plaintiff in error.

1. The Connecticut Valley Railroad Co. had no power by the provisions of its charter to mortgage property not in

existence at the time the mortgage was made. In this case, while the mortgage is dated October 1st, 1872, the replevied property was not purchased or made until after January 1st, 1876. Its charter provides that "said corporation may sell, convey, and dispose of, as it may see fit, such of its estate, real and personal, as said corporation may see fit so to sell, convey, and dispose of, *after having acquired the same.*" Sec. 5. Notwithstanding the authority to mortgage given by the 6th section of the charter, it cannot be plausibly contended that the legislature intended to authorize the company to mortgage property it could not otherwise legally convey away. *N. York Firemen Ins. Co.* v. *Ely,* 5 Conn., 572. The vote of the stockholders did not authorize the mortgage of property to be acquired, and not then in existence. This mortgage is therefore invalid as to all the personal property acquired subsequent to the time the mortgage was made, and consequently as to all the property which is the subject of this suit. *Jones* v. *Richardson,* 10 Met., 488; *Barnard* v. *Eaton,* 2 Cush., 303; *Codman* v. *Freeman,* 3 id., 309; *Henshaw* v. *Bank of Bellows Falls,* 10 Gray, 569; *Rice* v. *Stone,* 1 Allen, 569; *Rowan* v. *Sharps' Rifle Manuf. Co.,* 29 Conn., 328. A stipulation that after-acquired property should be subject to the mortgage is a mere executory agreement, which will not bind such property until actually executed by a new mortgage given after its purchase. There must be some instrument legally executed ratifying the mortgage after the acquisition of the property. *Codman* v. *Freeman,* 3 Cush., 309; *Chesley* v. *Josselyn,* 7 Gray, 490; *Jones* v. *Richardson,* 10 Met., 493. The mortgage itself contemplates the execution of a subsequent mortgage of after-acquired property, though no authority is given for that purpose by vote of the stockholders. Where the power to mortgage future acquired property exists, it is subject to certain limitations. The mortgage must relate to some particular property described therein, reasonably certain to come into existence, so that the minds of the parties may agree as to what it is to be. And the mortgagor must have a present actual interest in it or concerning it. There must be something *in presenti* of

which the thing *in futuro* is to be the product, or with which it is to be connected as necessary for its use, constituting a tangible existing basis for the contract. *Morrill* v. *Noyes*, 56 Maine, 466. In this case the building and leasing of the Central railroad, and the purchase of this property, took place more than three years after the execution of the mortgage, and could not have been contemplated by the parties thereto. The mortgage cannot be extended to cover the replevied property by any taking of possession by the mortgagee, and evidence that the mortgagee took possession is irrelevant and inadmissible. *Jones* v. *Richardson*, 10 Met., 492. The alleged surrender affected only the property which had been legally mortgaged. The property turned over was only that embraced within the terms of the mortgage, and any taking possession of property without authority from the mortgagor, would not vest a title in the mortgagee to the property so taken. The replevied property had no connection .with the Valley railroad, and the property upon its line. The purpose for which it was purchased, its location, and its use, all distinguish it from the property of the Valley Company, used by it in connection with its railroad. Even if the court should hold that the Valley Company had authority to convey, by mortgage, property to be acquired, as claimed by the plaintiff, we still say that the replevied property is not within the description in the mortgage. This is a case between attaching creditors and the mortgagee, and the creditors have a right to insist upon a strict construction of the description of the property mortgaged, in considering the validity of their attachment lien.

2. The property replevied is not sufficiently described to be covered by the mortgage. It is not described so that it can be identified. There is no language except the word " property " that can possibly cover the safes and furniture under any circumstances or any interpretation. Such general words are insufficient in the case of a mortgage. *Herman* v. *Deming*, 44 Conn., 125. " The property must be so described as to be identified either by the sort or locality, or both." *Cook* v. *Corthell*, 11 R. Isl., 482; *Barnard* v. *Eaton*, 2 Cush., 294;

*Chesley* v. *Josselyn*, 7 Gray, 490. In Connecticut the courts always require definiteness of description as to the debt in the condition of a mortgage. If a statute authorized the mortgaging of personal property, could it be plausibly contended that a mortgage of " all my personal property" would be a sufficient description of the property mortgaged? In this mortgage, by the word " property," is all the old iron, broken wheels and axles, tickets, books, &c., money in the drawers at the stations, and debts due for freight, covered? Is there to be one interpretation of the same law for railroad corporations, and another for private persons? There is no language in the mortgage other than that describing the use of the personal property as identifying it and its location, which can be said in any manner to describe it; but if it shall be claimed that the word " franchise," as used in the mortgage, gives it any wider scope than it otherwise would have, we answer that the word does not extend the effect of other terms employed to designate the tangible property intended to be mortgaged. *Beardsley* v. *Ontario Bank*, 31 Barb., 619, 625. The word "franchise," when used in a mortgage of a railroad, does not convey the corporate existence of the company, but only such franchise as is necessary to make the conveyance productive and beneficial to the grantees. *Eldridge* v. *Smith*, 34 Verm., 484; *Boston, Concord & Montreal R. R. Co.* v. *Gilmore*, 37 N. Hamp., 421; *Phillips* v. *Winslow*, 18 B. Monr., 445; *Bridgeport* v. *N. York & N. Haven R. R. Co.*, 36 Conn., 266.

3. The property replevied was purchased for use, and used exclusively, on the line of the Central railroad. The purchase of property, or ownership and possession of property by the Valley Railroad Company is not alone sufficient to bring it within the description of the mortgage. The company did not intend to include all its property in this mortgage. In express terms a portion of it is excluded. In order to be covered by the mortgage, it must come within the description of the mortgaged property as to its relation to the Valley railroad. *Parish* v. *Wheeler*, 22 N. York, 502, 512. It must be used as a part of the railroad. It must be used

and necessary to be used on the railroad for the purposes expressed in the mortgage, to wit, in the construction, completion, operation, and security of the road. It is the present use and not its "*ultimate*" use that determines whether the property is or is not within the mortgage. *Farmers' Loan & Trust Co.* v. *Commercial Bank*, 11 Wis., 207. The fact that the purchase of other property may be "essential" to, or increase the prosperity of, the railroad company, can not extend the mortgage to cover such property. *Dinsmore* v. *Racine & Mississippi R. R. Co.*, 12 Wis., 649; *Parish* v. *Wheeler*, 22 N. York, 502, 512. If the connection of the two roads was essential to the prosperity of the Valley Company, we say that the same end is now attained without the Central railroad being operated by the Valley Company or its trustee, and that such operation by the Valley Company was wholly unnecessary. The placing and using this property upon the Central railroad was not using it as a part of the Valley railroad, and does not show a necessity for its use for the purposes specified in the mortgage. Besides, the lease of the Central railroad by the Valley Railroad Company was invalid, and its possession of said railroad was unauthorized by law. The latter company was only authorized to lease railroads connecting with the tracks of its own road. Priv. Acts, 1868, 389; Gen. Stat., 323, sec. 27. The charter of the Connecticut Central Railroad Company contains the same provision. Priv. Acts, 1871, 84. The Central railroad and Valley railroad are not connecting roads. They are connected across the Connecticut River only by another railroad. The authority to lease connecting railroads impliedly prohibits the leasing of railroads which do not connect. *N. York Firemen Ins. Co.* v. *Ely*, 5 Conn., 568, 572; *New London* v. *Brainard*, 22 id., 555; *Occum Co.* v. *Sprague Manuf. Co.*, 34 id., 541; *Catlin* v. *Eagle Bank*, 6 id., 240; *Berlin* v. *School Soc. of New Britain*, 9 id., 180. Property used in the operation of another railroad unlawfully, cannot be said to be used in the operation of, or to be necessary for, the operation of the Valley railroad. The question whether the lease of the Central railroad is valid or not is material, as showing whether the

parties to this mortgage can have intended to convey property used upon the Central road in its operation. If the lease was without authority of law, the parties cannot have contemplated the possibility of its execution, nor can it be said that such property was used in the operation of the Valley railroad.

*R. D. Hubbard*, for the defendant in error.

1. The court below properly held that the mortgage covered future acquired property.—1st. Future acquired property may be the subject of mortgage, and when it comes into existence, and possession is taken by the mortgagee, his legal title becomes complete. *Rowan* v. *Sharps' Rifle Manf. Co.*, 29 Conn., 283; *Walker* v. *Vaughn*, 33 id., 577; *Morrill* v. *Noyes*, 56 Maine, 458; *Galveston &c. R. R. Co.* v. *Cowdrey*, 11 Wall., 459; *Pierce* v. *Emery*, 32 N. Hamp., 489; *Cook* v. *Corthell*, 11 R. Isl., 482; *Shaw* v. *Bill*, 95 U. S. Reps., 15.— 2d. The vote of the stockholders was intended to authorize, and did authorize, the directors to mortgage future acquired property. The purpose of the mortgage was declared to be "to borrow money to any amount or amounts not exceeding in the whole the sum of $1,250,000, in addition to the amount ($1,000,000) authorized by the vote of the stockholders, passed December 20th, 1870, *for the purpose of providing for the construction, equipment and maintenance of its railroad.*" It is evident that not a farthing of the $1,250,000 loan could have been raised if the equipment to be purchased by the loan was not to stand as security for the money loaned. Again, the bonds secured were to run for thirty years, and by that time the whole equipment of the road, and all its personal property existing at the time of the mortgage, would have ceased to be in existence. Is it conceivable that either party intended that the mortgages should carry only the bare real estate which the company had at the time of the mortgage, stripped not only of its worn-out, but also of its future and substituted equipment? And by authorizing a mortgage of its "railroad and *all its property rights and franchises under its charter, or any part thereof,*" the stockholders

authorized the directors to mortgage future acquired property. *Pierce* v. *Emery*, 32 N. Hamp., 484; *Coe* v. *Columbus &c. Railroad Co.*, 10 Ohio S. R., 372; *Cooper* v. *Wolf*, 15 id., 523; *Phillips* v. *Winslow*, 18 B. Monr., 431; *Phila. &c. R. R. Co.* v. *Woelpper*, 64 Penn. S. R., 366.—3d. This authority was delegated by the directors to the president as broadly as it was received by them from the stockholders, and in the same words.—4th. The mortgage executed by the president under the power included, in terms, future acquired property, and, if we are right in the premises, was within the power conferred by the votes of the stockholders and directors both. —5th. The mortgage was confirmed by the directors of the company by the appropriation of the money loaned on the credit of the deed of mortgage, and known by them to have been so loaned.   *Ottawa Plank Road Co.* v. *Murray*, 15 Ill., 337; *Dispatch Line* v. *Bellamy Manf. Co.*, 12 N. Hamp., 237.

2.   The court below properly held that the property replevied, being in use on the Central railroad at the time of the surrender, was covered by the terms of the mortgage.— 1st. The case finds that the property in question was intended for use under a temporary lease, "but ultimately for the general use of said Valley railroad." This is enough to bring it fairly within the description of the mortgage. In addition to this, the property was actually in the service of the Valley railroad whilst in use on the Central, contributing to its use and profit. The case finds that "it was *essential* to the prosperity of the Connecticut Valley Railroad Company, and to the convenience of the public, that said Valley railroad should be run in connection with said Central railroad."—2d. The language of railroad mortgages is construed strictly against the mortgaging corporation and very liberally in favor of the bondholders. "The mortgage of the entire line of a railway, with all the *tolls and revenues* thereof, covers not only the line of the road, but all the rolling stock and fixtures, whether movable or immovable, essential to the production of tolls and revenues." *State* v. *Northern Central R. R. Co.*, 18 Maryl., 194. To the same effect are *Cooper* v. *Wolf*, 15 Ohio S. R., 523, and *Phillips* v. *Winslow*, 18 B. Monr., 446.—3d.

Whether the corporation had a right to lease the Central railroad in aid of its own, is in this proceeding utterly inconsequential. The question is between the state and the corporation, or between the corporation and its members. Third persons are not concerned in it. That the property replevied was in actual railroad use by the plaintiffs, and for their direct profit, on an actually connecting line, and temporarily only, is found. If they had used a portion of their cars on the leased section of the line, would the mortgage lien on such cars and engine be thereby dissolved?

3. It is objected that the property is insufficiently described in the mortgage; but—1st. A mortgage of personal estate is not subject to the same rule in this respect as a mortgage of real estate. The principles and policy of the recording system applicable to the latter are not applicable to the former.—2d. The property here in question being future acquired property, nothing but a very general description would be possible. Nothing more, therefore, can be required. Nothing more has ever been required in case of railroad mortgages. *Morrill* v. *Noyes,* 56 Maine, 468; *Pierce* v. *Emery,* 32 N. Hamp., 489; *Galveston &c. R. R. Co.* v. *Cowdrey,* 11 Wall., 461; *State* v. *Northern Central R. R. Co.,* 18 Maryl., 218; *Coe* v. *McBrown,* 22 Ind., 252; *Phillips* v. *Winslow,* 18 B. Monr., 443; *Parish* v. *Wheeler,* 22 N. York, 502; *Shaw* v. *Bill,* 95 U. S. Reps., 15.—3d. Possession was here delivered and taken, and when this is so, no specification is necessary in the case of personal estate. Possession is itself both specification and identification.

4. The title of the plaintiff under the mortgage, whatever defects it may have originally had, has become validated, confirmed, and perfected.—1st. The vote of the directors authorized the "*transfer and surrender* to the treasurer of this state, for the benefit of either the first or second mortgagees of this road, or for the benefit of both, as may be thought expedient, *all the property, both real and personal,* and all rights, privileges, and franchises of this company." —2d. The case finds that "said Valley railroad surrendered its *railroad and property* to the plaintiff as trustee under said

mortgage."—3d. Any property thus turned over to the trustee for the security of the bondholders would, by that very act, be held in pledge and inure to the security of the bondholders, whether originally included in the mortgage or not. That the directors had power to turn over to the trustee, for the security of the bondholders, by mere act of delivery, any personal property not included in the mortgage, is familiar law. "It would be very extraordinary if this or any other corporation had not the power to appropriate its property to the payment or security of its honest debts." *Jackson* v. *Brown,* 5 Wend., 590.

PARDEE, J.   This is an action of replevin instituted by the plaintiff as trustee for the second mortgage bondholders of the Connecticut Valley Railroad Company, to obtain possession of certain personal property which had belonged to the company and was claimed to be covered by the mortgage.

The Connecticut Valley Railroad Company was incorporated in 1868, with power to construct a railroad from Saybrook to Hartford, and to issue bonds and mortgage its property to secure them.   In 1873 it borrowed $1,250,000 for the completion and equipment of its road, and secured it by a second mortgage upon all of its property to the treasurer of the state in trust for the bondholders.   On January 1st, 1876, it took a lease for the term of five years of the Connecticut Central Railroad, extending from East Hartford to Springfield in Massachusetts, having previously obtained the right to run its trains upon the track of the Hartford and Providence road from its own terminus in Hartford to the terminus of the Central road in East Hartford, thus securing an unbroken track from Saybrook to Springfield; and it bought the property in question with intent to use it along the line of the Central road while the lease continued operative, and thereafter upon its own line.   Being unable to pay the interest upon the bonds referred to, on the 29th of June, 1876, it surrendered its road, together with its franchise and all property real and personal then owned by it, to the state treasurer as trustee for the bondholders, who took the road and all of

the property into his possession, and placed that portion of it here in controversy in the keeping of various persons along the line of the Central road, to hold for him, and while thus held, the defendant, on the 27th of December, 1877, attached it as the property of the Connecticut Valley Railroad Company. Upon the surrender to him the trustee terminated the lease of the Central road; after October 1st, 1876, the two roads ran trains in connection. The property when attached had never been in use upon the line of the Valley Company.

The trustee brought an action of replevin, and recovered judgment; the defendant filed a motion in error, assigning for error that the court decided that the mortgage covered after-acquired property, including that purchased primarily for use on the Central road, and which had not at the time of the attachment been in use upon the Valley road.

By its charter the Connecticut Valley Railroad Company was authorized from time to time, for the purpose of providing for the construction, equipment and maintenance of its railroad, to borrow money, issue bonds, and secure the payment thereof by a mortgage of all of its railroad property, rights and franchises to trustees. Upon default of payment of interest, the general statute provides that, upon proper application and hearing, the court may order it to surrender all such mortgaged property to the trustees, who are thereafter required to operate the road for the benefit of the bondholders. Thus permission is given to borrow money in advance of the possession, even of the existence, of the personal property to be used in the operation of the road, for the express purpose of buying or manufacturing it; the legislature intended to allow the company to give the amplest security for the repayment of the money; the bonds are made to mature only after the lapse of many years; the personal property of the company constitutes a valuable portion of its assets; and all of the earlier purchases are certain to be consumed in the use, and require replacement time and again before the bonds become payable. Therefore these provisions of the charter and of the general law, read together, are susceptible of but one interpretation; that the

company is authorized to pledge, and the trustees to take, such personal property as may be held for the purpose of operating the road at the time of the surrender, irrespective of the date of its purchase; the property, rights and franchises are to go as an unit to them.

But, aside from this, it is now well established by decisions in various states, that a mortgage of the railroad and franchises of a company, together with such real and personal property as may then be owned or thereafter acquired for use in connection therewith, will create a valid lien thereon; that it is so far appurtenant to the road that the company has a present, existing interest in it sufficient to uphold the grant of both together—the one as incident to the other; and, in view of the vast sums of money which have been loaned upon the faith of such grants, it is quite too late to question the doctrine. *Morrell* v. *Noyes*, 56 Maine, 458; *Pierce* v. *Emery*, 32 N. Hamp., 489; *Shaw* v. *Bill*, 95 U. S. Reps., 15; *Philadelphia &c. R. R. Co.* v. *Woelpper*, 64 Penn. S. R., 366.

Again, on June 12th, 1876, the directors of the company authorized their executive committee to surrender to the trustee all of its property, real and personal, without limitation or restriction of any kind, for the benefit either of the first or second mortgagees or both. In the exercise of the power thus given the committee surrendered to him all of the property of the company for the benefit of the second mortgagees, and co-incident with the delivery of the property executed a written declaration of transfer, in which they stated that they intended to surrender all the property real and personal described in the mortgage; and we are asked to say that this operated as a reservation to the company of all property acquired after the execution thereof. We are to discover and carry into effect the intent of the parties. The execution of the power by act of delivery was in fact as unlimited as the authority given; and as they both had and exercised unlimited power of delivery, we are to presume that an unreserved surrender was intentionally made. The effect of the expression referred to is simply to indicate the trust under which the property was delivered and not to establish

a reservation of anything from the trustee. The company intended to pledge this property; the mortgagees believed that it was pledged; the directors ordered the surrender of it as pledged, and the committee executed the order; and we cannot assume that they did it with any reservation. As a matter of law the after-acquired property was well specified and included in the mortgage; therefore a surrender in the terms of the mortgage would constructively include it.

Upon principle, the delivery to and possession by the trustee for the purpose of holding in pledge for a debt, before the intervention of the defendant, perfected the right of the trustee to the property irrespective of any infirmity in description in the mortgage deed. In *Rowan* v. *Sharps' Rifle Manufacturing Co.*, 29 Conn., 283, it was held that "where a mortgage of a factory and its equipments embraced in its terms such machinery and stock as should be afterwards purchased and placed upon the premises, and the mortgagee had afterwards taken possession of the factory, with such subsequently acquired property, that whatever effect was to be given to the provision in itself, it became operative upon possession being taken by the mortgagee." And in *Walker* v. *Vaughn*, 33 Conn., 577, it was held that a mortgage of personal property not yet acquired by the mortgagor will take effect as against him and others not having acquired precedent rights, on the title becoming vested in him and possession taken by the mortgagee.

And, going one step farther, in the absence of any mortgage the surrender and delivery of the property by the owner, to be held in pledge for a specific debt, would entitle the trustee to the possession. It was thus delivered, received and held, in fact, and in the intent of both parties. He thus acquired a right to apply it to the liquidation of the debt which takes precedence, in law as well as in time, of the lien which these defendants desire to enforce.

The company in terms pledged all property which should thereafter be acquired by it and be necessary for the operation of its road. The word *necessary* imports more than property without which the road could not be operated at all; it

includes such property as the company should thereafter deem it best to acquire for the most profitable use of the franchise to itself, and the most beneficial use of it to the public; and all property bought for this purpose, in the reasonable exercise of a reserved discretion, becomes pledged to the bondholders. It is found that it was essential to the public convenience and the prosperity of the Valley Company that it should be operated in connection with the Central road. The Valley Company purchased most, and manufactured the remainder, of the property in question, intending immediately to use it on the Central line in establishing, substantially, such connected service; that service ended, ultimately upon its own road. Property purchased for this special service, found to be essential alike to corporate profit and public good, is "necessary" within both the language and spirit of the grant.

It may be true that the company erred in the belief that it had power to assume the relation of lessee to the Connecticut Central Company; in the belief that it could use the property in the specific character of a lessee; and it may be true that upon motion of the state or of a stockholder the court would annul the lease. But, this being done, there would remain the purchase of property by the Valley road for a service essential to any profitable exercise of its franchise; there would remain the right to use it as before at points along the Central road, without any lease; the right and the intent to use it within the limits of its own road when for any reason it should be unable or unwilling to use it along the Central line; and the right to surrender it to the mortgagee to be applied upon its debt. The presence of an error, at the time of purchase, as to the right of the company to use it in the character of lessee of the Central road, did not make it legally impossible for the Valley Company to include it in the mortgage. As such was its intention, and as the mortgagees supposed it to have been included, we find no reason for the exclusion.

Again, it is objected that the words "all property which may hereafter belong to the company," are too indefinite to

constitute a pledge. To this it may be said that the fact that the pledge is permitted to reach into the somewhat distant future, and attempts to include every variety of article then existing, or even thereafter to be invented, for use in operating railways, must of necessity relax the rigor of the rule as to precision in description of what is pledged; the law having given leave to do an act, it must not be made impossible of execution by rules of construction. There is enough of limitation in this, that all included property must have been bought and be in use for the purpose of transacting and increasing the business of the road. Besides, usually the pledge of chattels is by an individual and of a part only of those belonging to him; he retaining possession as apparent owner alike of articles pledged and unpledged; persons intending to give him credit are entitled to knowledge as to what is free and what is not; for such cases a rigid rule of description has been established and enforced. But in the case before us the reason of the rule fails. The defendants knew long before they gave credit to the company that the law had given it permission to pledge all property which it should thereafter acquire and use in or about the business of its road, and they knew too that it had in fact made such a pledge to its creditors. Therefore when they attached property which they saw was in use by it in railway business they acted with all the knowledge which a description certain in every particular could give them; they had notice of the pledge and that nothing was excepted from it. They have no more occasion for complaint than would have any person taking with knowledge of existing prior rights.

There is no error in the judgment complained of.

In this opinion CARPENTER, LOOMIS and GRANGER, Js., concurred; PARK, C. J., was of opinion that articles procured with the intention to use them on the Connecticut Central Railroad were not covered by the mortgage.

[NOTE.—This case was heard, with the next preceding, at an adjourned session of the court, when Judge GRANGER was present, though not present at the regular term.]