# WHEELING.

CHAPMAN v. P. C. & ST. L. RAILWAY CO.
(*Nos. 1 and 2.*)

SAME v. SAME.
(*No. 3.*)

ON RE-ARGUMENT.

JOHNSON, PRESIDENT:

These causes were before this Court and were decided on April 22, 1885, and the decrees in the said causes respectively affirmed. Upon petition of the defendant, the Pittsburg, Cincinnati and St. Louis Railway Company, the orders in said causes were set aside, and the causes again placed upon the docket for re-argument. At the present term they were re-argued and again submitted to the Court for decision.

The Court before decided that the attachments held the property, because among other reasons the mortgage-deed from which the defendant derived its title, did not convey the, property in West Virginia. Of the correctness of that opinion, so far as the first mortgage-deed is concerned, there is in our minds no question. But it is argued and insisted, that

the second mortgage-deed did convey the property, and that therefore there was nothing to attach, until the second mortgage-creditors were paid. The second mortgage was executed on the same day, that the first was, to-wit, October 10, 1856, although dated August 1, 1856. It was executed by Isaac Jones, president of the Pittsburg and Steubenville Railroad Company, and Sidney F. Von Bonhorst, the secretary of said company, to Ambrose W. Thompson and Daniel Tyler, trustees. It recites : "Whereas the said Pittsburg and Steubenville Railroad Company in pursuance of the powers, rights and privileges conferred by the act incorporating said company and supplementary acts of the Commonwealth of Pennsylvania, and all and every other right, privilege and authority in that behalf, enabling them to complete their railroad, extend their works, provide locomotives, cars, machinery, depots and land therefor have for the completion and equipment of their road authorized their president and secretary to execute in the corporate name of said company" bonds of different denominations. " Now this indenture witnesseth, that said Pittsburg and Steubenville Railroad Company, party of the first part, as well for and in consideration of the premises, and for the better securing the payment of the aforesaid bonds, &c., * * have granted, &c. the whole of their railroad together with the lands, depots, depot-grounds, and buildings situated at and between the termini of their railway, at the city of Pittsburg and the boundary line of the State of Virginia, in the counties of Allegheny and Washington in the State of Pennsylvania, and also all the property and franchises, and the tolls, issues, increase and profits, of the said company hereafter derived to them from the use of or travel on their said road, or any part thereof, and also all the cars, engines, locomotives, tenders, turntables, machinery, tools and railroad implements, horses or other things used in the business or management of said railroad, *and also all the interest of said railroad in property held in trust for them or for their benefit*, to have and to hold all and singular, the estate, hereditaments and premises, hereby granted, or intended to be, with the appurtenances, unto the said parties of the second part hereto, their heirs, executors, administrators, successors and assigns of such survivors and survivor, and to the survivors and sur-

vivor of them," &c., * * subject however to a certain mortgage bearing even date herewith made to Thomas McElrath, to secure, &c.

The following is also in said deed: "Provided also, and it is hereby expressly understood and agreed to by all the parties hereto, that if at any time during the continuance of this mortgage, the party of the first part hereto, (with the concurrence of the parties of the second part, their successor or successors in the trust) shall deem it advantageous to the interests of the said company to sell and dispose of any of their said depots and grounds belonging thereto, *or any other of their real estate situated as aforesaid,* then and in such case, it shall and may be lawful for the said parties of the second parts their successor or successors in the trust, to execute to the party of the first part, and to the purchaser or purchasers thereof a full and entire release and discharge of the lien of this mortgage *on or upon the same*; that the said party of the first part shall have the right to sell, exchange, dispose of, and renew any of their engines, cars, machinery and other of their personal property when from time to time it shall be necessary in good faith to do so for the interest and welfare of the road, and the profitable direction and management of the same, without the concurrence of the said trustee or his successor or successors in the trust, and any other real estate *situated as aforesaid* and *personal estate wherever situated,* which shall or may be purchased," &c.

It is insisted by counsel for the Pittsburg, Cincinnati and St. Louis Railway Company, that this mortgage deed passed *all the real estate held in trust,* for the Pittsburg and Steubenville Railroad Company, *situated in Hancock and Brooke counties, Virginia,* claiming, that at that time real estate was so held in said county. Counsel argue, that the deed should be so construed, that every part thereof will if possible be made operative. This is a correct rule of construction. (*Salisbury* v. *Andrews,* 19 Pick. 250; *Ammidoun* v. *Ball,* 8 Allen 293.) A general description of property in a deed is sufficient to pass the title thereto, provided the property is so designated that it can be known what property is intended to be conveyed. It is claimed by counsel for the railway company, that the generality of its language forms no objection to the

validity of the clause of the deed under consideration. He cites to sustain this position, ( *Wilson* v. *Boyce,* 12 U. S. 320 ; *Railroad* v. *Trimble,* 10 Wall. 367 ; *Munday* v. *Vawter,* 3 Grat. 518, *Id.* 609 ; *Warren* v. *Syme,* 7 W. Va. 493 ; *Wickham & Goshorn* v. *Martin & Co.* 13 Grat. 427 ; *Coleman* v. *Manhattan Beach Co.,* 94 N. Y. 229; *The People, ex rel* v. *Storms,* 97 N. Y. 364 ; *Buck* v. *Seymour,* 46 Conn. 156.)

In *Wilson* v. *Boyce, supra,* it appears that the Cairo and Fulton Railroad Company accepted Missouri State bonds issued under an act of the legislature, which declared that they should "constitute a first lien and mortgage upon the road and property" of the company. Subsequently to the receipt of the bonds the company executed a deed of trust upon its lands, which had been granted by Congress to aid in the construction of the road. Boyce claimed the lands situate in Scott county, Missouri, by virtue of a sale made under the act of the legislature declaring the mortgage on the land, and Wilson claimed under a sale made under the deed of trust. Boyce was in possession of the lands and Wilson brought an action of ejectment to oust him. The court held, that the word "property" included all the lands of the said company, and that a valid lien was created on them by the acts.

In *Railroad Co.* v. *Trimble,* 10 Wall. *supra.,* it was held, that a deed, by which a party conveys "all his property and estate whatsoever and wheresoever, of every kind and description" carries patent rights and extensions, if the party own any.

In *Munday* v. *Vawter,* 3 Grat. 494, it was held, that a conveyance of "all the estate, both real and personal" to which the grantee "is entitled in law or equity in possession, remainder and reversion is valid to pass the grantor's whole estate.

In *Wickham & Goshorn* v. *Martin & Co.,* 13 Grat. 427, *supra,* the grantor and trustee both lived in Virginia, where the deed was executed ; the goods, which the insolvent merchant had bought but had not paid for, were sold in Baltimore and were sent by the purchaser to Ohio apparently for the purpose of concealing them, and the seller of the goods there got possession of them, after the trustee had taken posses-

sion, and the trustee sued the seller in Virginia for the goods. It was held that the deed was to be construed according to the law of Virginia. The deed after conveying the debtor's property, describing it by its location, which did not include the goods in controversy, and after stating the trusts, upon which it was conveyed, in the conclusion contains the following : "And it is further expressly understood, that if through accident, or forgetfulness, or inattention, the said M. G. (the grantor) may have omitted to mention any claim or property, that the same shall be understood as being conveyed hereby to the said trustees, to all intents and purposes as if specifically mentioned." It was held that the goods in Ohio passed by the deed.

In *Warren et ux* v. *Syme*, 7 W. Va. it was held, that intrinsic certainty in a deed relative to specific property is impossible. The description can be made certain only by proof or recognition of the identity of the subject, to which it relates, or other objects or things that more or lesss directly and distinctly indicate and determine it. And in the application of deeds and other documents to lands and lots extensive latitude for the discovery and proof not only of visible monuments or objects mentioned but of mathematical lines of other lands and lots and various other classes of facts, to which the description or suggestions in the document may apply.

In *Coleman* v. *Manhattan Beach Company*, 94 N. Y., it was held, that while it is essential that premises, upon which a grant is to operate, must be so described therein, that they can be identified, it is not necessary that they should be described by boundaries, courses or distances or by reference to monuments ; where words of general description are used oral evidence may be resorted to to ascertain the particular subject-matters, to which they apply, and if with the aid of such evidence the premises can be located, the grant will not fail. The deed in that case described the granted premises as "Pelican Beach near Barren island" ; and it was held not void for uncertainty.

In *The People ex rel.* v. *Storms*, 97 N. Y. 364 it was held, that a mortgage will not be held void by reason of vagueness or uncertainty in the description of the mortgaged premises,

if by any particulars in the description they can be ascertained so as to enable the court to say, that the words used were intended to relate to them; further, that for this purpose evidence *aliunde* the instrument may be resorted to if the deed refers to some subject-matter, by the aid of which the description may be located and applied, it is sufficient. So also if there be two phrases in the description which can not be reconciled, one of which will defeat, the other sustain the instrument, the former will be rejected. Danforth, Judge, in delivering the opinion of the court said of the description: "There is here a clear designation of the county, town and lot, where the mortgaged premises may be found, of the quantity to be mortgaged and a specific location of the same, as on 'the south side of it, next to Mr. Norton's.' "

In *Buck* v. *Seymour*, 46 Conn. 156, it was held, that the property to be acquired by a railroad company could be held by a mortgage of such property before acquired, and the description of the after-acquired property as "all property, which may hereafter belong to said company and be used as a part of said road," was not too indefinite.

In *Mathews* v. *Jarretts*, 20 W. Va. 415, it was held, that in a suit for the specific execution of a contract for the purchase of land, where neither the contract itself, nor the extrinsic proof of the surrounding circumstances, identifies or defines the tract or boundaries of the land nor refer to anything, by which it may be identified with reasonable certainty the Court will not decree a specific performance but will dismiss the bill.

"In construing a deed" says Washburne, Vol. 3, 384, "the court places itself as nearly as possible in the situation of the contracting parties; and their interest will be ascertained in the same manner as in the case of any other contract. If the intention is not then apparent from the deed, resort is to be had to the rules of construction, which give greater effect to those things about which the law presumes the parties are the least liable to make a mistake. But arbitrary rules are not to be invoked, if the intention of the parties can be plainly discovered without their aid." This is taken from *Kimball* v. *Semple*, 25 Cal. 449.

It has been held, that, if the estate can not be ascertained

by the description in the grant, the deed fails altogether, thus where the terms of the grant recited, that it was part of a certain patent bounded by other lands named, "and supposed to contain 400 acres, whereby about 100 acres were struck off to J. W. 'Now know ye' &c. "do grant, bargain and sell the before mentioned premises to the said J. W." it was held void for want of a sufficient description to show what premises were granted. (*Peck* v. *Mallam*, 10 N. Y. 509 : *Dury* v. *Cray*, 10 Wall. 270; *Hill* v. *Mogry*, 6 Gray 551; *Boardman* v. *Reed*, 6 Pet. 345.)

The rule laid down in *Boardman* v. *Reed*, 6 Pet. is "The entire description of the deed must be taken, and the identity of the land ascertained by a reasonable construction of the language used." This is undoubtedly a correct rule. But when words of general desciption are used, oral evidence may be resorted to to ascertain the particular subject-matter to which they apply, and if with the aid of such evidence the premises can be located, the grant will not fail. *Coleman* v. *Improvement Co.*, 94 N. Y. 229. But such evidence can not be used to supply any omission or defect in the terms of the deed. And there is another rule laid down in *Railroad Co.* v. *Trimble*, 10 Wall. 367 to be observed in construing a deed, which is also correct, and that is : Where there is doubt as to the proper meaning of an instrument, the construction which the parties to it have themselves put upon it, is entitled to great consideration ; but where its meaning is clear, an erroneous construction by them will not control its effect.

Now giving this mortgage a reasonable construction does it or does it not include the West Virginia land ? It must be observed first, that the corporation, that executed the mortgage, was created by the legislature of Pennsylvania, and it as such corporation had no right to go any where outside of that State to do any business except by the authority of the State, into which it intended to migrate. As we have said in the opinion before delivered, and with which in this respect we are entirely satisfied, the first mortgage limits the property conveyed by it to the termini of the road, which are in the State of Pennsylvania, and that deed did not and could not by any reasonable construction include the West Virginia lands. The same language precisely as to the authority

of the corporation and the limit of its road, and the description of the property, substantially is used in the second mortgage as in the first, except in the second the words "and also all the interest of said railroad in *property* held in trust for them or for their benefit." What kind of property, we are not informed. In a subsequent part of the deed we are made to understand, where it is situated, if it is *real* propety. In the proviso power is retained by the party of the first part, the railroad company, during the continuance of the mortgage with the concurrence of the parties of the second part, if deemed advantageous to the company, to sell and dispose of any of their "said depots and grounds belonging thereto, or any of their *real estate situated as aforesaid*," also to sell or exchange the personal property, and any other *real estate situate as aforesaid*, and personal estate *wherever situate*, which shall or may be purchased, &c. The only State mentioned where any of the property is situated, is Pennsylvania. Virginia is not referred to in the whole deed except in such a manner as to indicate that nothing granted was situated in that State. After the words, "and also all the interest of said railroad in property held in trust for them or their benefit," it *real estate* is meant by the word "property," words are used which clearly indicate where it is situated, where it is said, in referring to what had been granted, in giving a right to dispose of it, "said depots and grounds belonging thereto or any other of their *real estate situate* as aforesaid. Where situated? Referring back to the first of the deed, we find this: "The whole of their railroad, together with the lands, depots, depot-grounds and buildings *situated at and between the termini of their railway at the city of Pittsburg, and the boundary line of the State of Virginia in the counties of Allegheny and Washington in the State of Pennsylvania.*" This idea is still further borne out by the clause, giving the grantee the right to sell or exchange the personal property and "any other real estate *situated as aforesaid*, and personal estate *wherever situate*, which shall or may be purchased," &c., showing that the mortgage did not contemplate any real estate purchased or to be purchased except that *situated as aforesaid*, that is, between the *termini* of their road in Pennsylvania. The personal property might exist anywhere. It might be bought in the east and be

sold, or exchanged, before it came upon their road. It is asked then : What effect can be given to the clause ? It might have referred to *personal property* held in trust, or the scrivenor might have thought it would add strength to the description of the real estate in Pennsylvania; for as it is not shown in this record how it was held, it may have all been held in trust for the company. This is certainly unlike the class of cases, where the whole grant is "all the property owned by the grantees." In these cases there seems no difficulty in saying *what* property was intended ; for wherever any property of the grantor is found, that passed, as *all* was included. Here effect can and should be given these words without doing violence to others of the deed.

Again under the rule laid down in *Railroad Co.* v. *Trimble,* 10 Wall. *supra,* this view, which we have taken, is much strengthened by the construction the parties themselves put upon the deed. It seems, that for ten years they treated the second mortgage, as they did the first, as though it did not include the West Virginia lands. The acknowledgments to the deeds imply, that it was not contemplated, that they should be recorded in Virginia, but in Pennsylvania only. A commissioner in New York appointed by the governor of Pennsylvania took one of the acknowledgments. The deed from Jones to Thompson and Tyler, and from Thompson and Tyler to Seabrook, trustee, which do describe the Virginia lands, were acknowledged by commissioners for Virginia. The recordation in Pennsylvania took place at once, it is presumed, but not for more than ten years in Virginia, and not until attachments were sued out in all of the causes. Thompson and Tyler were parties to the Pennsylvania suit, by virtue of the second mortgage, in which they are trustees ; and they say nothing about any interest in West Virginia lands. As our former opinion will show, there was no claim in any of the pleadings in the Pennsylvania suit either by plaintiffs or defendants, that the first mortgage included the West Virginia lands; and the same is true as to the second mortgage. In that suit it was not claimed by any of the parties, that the second mortgage passed any interest in the Virginia lands. The whole bearing of all the parties for more than ten years indicated, that it was not understood by

any one, that the second mortgage any more than the first embraced the Virginia lands.    I think, that according to the well established rules of construction the second mortgage can not be held to pass title to the Virginia lands.

I have been discussing the question, as though it appeared from the record, that at the time the second mortgage was executed, to-wit : on  October 10,  1856, there were lands in West Virginia held in trust  for the Pittsburg  and Steubenville Railroad Company.   My associates express no opinion upon the legal questions by me discussed above, for the reason that in their  opinion it is  not  necessary, as the record does not show, that at the date of the second mortgage the lands in controversy or  any  other  lands were held in trust for said company in Virginia.

The deed from Isaac Jones, to  Daniel Tyler and Ambrose W. Thompson, which is  dated November 27, 1856, and acknowledged on the  same day nearly four  months after the second mortgage deed, and more than a month after the execution thereof, is the  first  deed appearing  on the record, which shows that any lands were held in trust in Virginia for the said railroad company.   If any trusts existed before that time, which would in  equity  entitle  the  said railroad company to any interests in the Virginia lands, they were  secret trusts ; and there is no evidence that any such trusts existed. For aught that appears in the record the Pittsburg and Steubenville Railroad Company might  have acquired an  interest in the lands  mentioned in said  deed on the day it was executed.    This is conclusive  of the point, on  which the re-argument was granted.

The Court sees no reason to change its opinion on the other points  formerly decided.    The  same decrees,  which were on  April 22, 1885, entered in these causes respectively, will now be again entered, and  the  opinion  in said  causes will now be again handed down.

AFFIRMED.