Spies *v.* Chicago & E. I. R. Co.

(*Circuit Court, S. D. New York.* October 10, 1889.)

1. Railroad Companies—Bonds and Mortgages—Income Mortgage.

An income mortgage, made by a railway company, conveyed, as security to the bondholders, several lines of railroad running between specified termini, constituting the company's system of roads, and pledged the net earnings of this system of lines as security for the payment of annual interest. The mortgage provided that in each year, during the currency of the bonds the board of directors should ascertain, fix, and declare what amount of net earnings had been made during the fiscal year applicable to the payment of interest on the bonds; that in such ascertainment there should be deducted from the gross income the operating expenses, taxes, interest, together with such expenditures for renewals, repairs, and betterments as might be requisite to maintain the line of railroad and its appendages in a first-class condition; that after deducting such expenses the board of directors should thereupon "fix, establish, and adjudge" whether any, and if so how much, net income existed applicable to the interest upon the bonds; that if, on such as-

 certainment, the board of directors should adjudge no net income had been realized during the year applicable to such interest, their adjudication should be final and conclusive as an award, and bar any claim of any bondholder for interest for such year; that, if they should adjudge a specific sum to be applicable out of the earnings as interest, such interest should be allowed and paid; and that no right of action should exist in favor of any bondholder for interest until the same should first be adjudged and awarded as aforesaid. Subsequent to the execution of the mortgage, the railway company acquired additional lines of railway. Distinct accounts were not kept of the income of the original lines, but the earnings and expenses of those lines and of the new lines conjointly were kept as a single account. The board of directors, without endeavoring to ascertain whether net income had been earned by the original lines, resolved that no income had been earned applicable to interest. In an action brought by a bondholder, alleging that interest was payable, for an accounting, *held*, (1) that the lines specifically described in the mortgage constituted the income fund pledged to the bondholders; (2) that it was the duty of the company to keep a separate account of earnings and expenses of those lines, and of the board of directors to make an ascertainment annually whether income had been earned; (3) that the company could not charge against the income of the original lines the expenses or losses incurred in operating the new lines; (4) that the fact that no award of interest had been made by the board of directors was not a defense to the action.

2. SAME—FRAUD OF DIRECTORS—PLEADING.

The bill filed by the holder of income bonds charged that the directors, in order to make him exchange his bonds for certain consol bonds, willfully made a fictitious, false, and fraudulent ascertainment of the income earned, and fraudulently adjudged that no income applicable to interest had been earned; and it appearing that the directors erroneously, but in good faith, made the ascertainment by mingling the accounts of the original railway lines mortgaged with those subsequently acquired, *held*, the bill should be dismissed, because the complainant, having alleged a case of fraud, cannot be permitted to support his case on any other ground.

In Equity. On bill for an account.

For report of opinion on demurrer, see 30 Fed. Rep. 397.

*John W. Weed*, for complainant.

*Austen G. Fox*, for defendant.

WALLACE, J. The cause has been brought to hearing upon bill and answer, with a stipulation admitting that the complainant's title to the bonds which are the foundation of his claim is to be deemed as established by the pleadings. The complainant is the owner of certain income bonds secured by a mortgage executed in 1877 by the defendant, pledging the net earnings of its line of railway for the payment of interest. The mortgage includes "all and singular the line of railways belonging or hereafter to belong to the party of the first part, and extending from Chicago, Cook county, Ill., through the counties of Will, Kankakee, Iroquois, and Vermillion, to the city of Danville, together with a branch from Bismarck's Junction easterly through Warren and Fountain counties, Ind., to Snoddy's Mills, and its equipments and appendages, and the net income thereof." The bonds are conditioned for the payment of such interest on the principal, not to exceed 7 per cent. for any one year, as shall be declared and fixed by the board of directors in each year in accordance with the mortgage. The mortgage provides that in each year during the currency of the bonds, beginning with the year 1878, the board of directors shall in the month of October ascertain, fix, and declare what amount of net earnings has been made during the preceding fiscal year ending the 1st day of September, and is justly applicable to the payment of interest on such issue of income bonds; and in such ascertainment of net earnings there shall be deducted from the gross

income all operating expenses, taxes, insurance, liability for either interest or sinking fund on any of the existing bonds of the company, necessary rentals, and purchase or hire of equipments, together with such expenditures for renewals, repairs, and betterments as may be proper and requisite to maintain the line of railroad and its appendages in a first-class condition for effective service; and that, after deducting all such payments, expenses, and liabilities from the amount of gross income received during the year, the board of directors shall thereupon fix, establish, and adjudge whether any, and, if so, how much, net income exists which is applicable to the payment of interest on the said issue of income bonds. The mortgage further provides that if on such ascertainment the board of directors adjudge that no net income has been realized during the year applicable to such interest payment, they shall thereupon enter a resolve to that effect on the journal of their proceedings, and the adjudication shall be final and conclusive as an award, and shall operate as a perpetual bar against any claim or demand of any holder of such income bonds for the payment of interest for such year; and that, if the said board shall, on such ascertainment of net earnings, adjudge that a specific sum is available out of the net earnings for such interest payment, then a resolve shall be entered in their minute of proceedings in the nature of a final and conclusive award, fixing and declaring what ascertained sum is properly available out of that year's net earnings for the payment of interest on such income bonds, and the payment or rate of interest to be allowed and paid. The mortgage further provides that no right of action shall exist in favor of any holder of such income bonds for any alleged liability for interest, until the same shall first be adjudged and awarded as aforesaid. The bill alleges that prior to September 1, 1883, interest on the bonds had been ascertained and declared by the board of directors, and duly paid to the holders of the bonds; but that thereafter the defendants and its officers and board of directors conspired to fraudulently compel the complainant and other holders of said income bonds to surrender the same, and exchange them for consol bonds subsequently created, and to fraudulently withhold at first a portion and then the whole of the net earnings which were properly payable upon said bonds; and with a view to carrying this evil design into effect they willfully, maliciously, and fraudulently failed to make any true ascertainment in the month of October, 1884, or in the month of October, 1885, of the net earnings for the preceding fiscal year, and willfully made a fictitious, false, and fraudulent ascertainment of the same, whereby they sought to make it appear that nothing had been earned on account of such interest; and that the officers and board of directors well knew at the time of each of said pretended ascertainments that the net earnings, if the same had been ascertained in the manner prescribed by the mortgage, were more than sufficient to have paid 7 per cent. interest upon the principal of said bonds. The bill then sets out what devices were resorted to by the board of directors to cover up and defraud the holders of income bonds out of the net earnings properly applicable to interest thereon,—among others, the mingling of the

accounts of the division of the railway covered by the mortgage with the accounts of consolidated, constructed, and leased lines acquired by the defendant after the execution of the mortgage, including charges for additional equipment for the new lines. The answer fully meets and denies all the averments of fraud and conspiracy, but it admits that separate accounts have not been kept by the defendant of the net earnings of the original lines; that the accounts of the earnings and expenses of these lines and those subsequently acquired have been mingled together; and that the board of directors did not attempt to make any ascertainment in 1884 or 1885 of the net earnings of the original lines. It appears by the bill and answer that the new lines built, acquired, or leased by the defendant embrace a large mileage, and have cost the defendant a large sum of money; and that in June, 1884, the defendant issued consol bonds bearing interest at 6 per cent. per annum, secured by a mortgage upon its property, which have been used in part to pay for the new lines and their equipment, and has used part of its earnings to pay interest thereon. The bill prays for an accounting, and a decree for the payment of what is ascertained to be due from the defendant.

When the case was before the court on a former occasion upon a demurrer for want of equity, and alleging that the trustee named in the income mortgage was a necessary party, the demurrer was overruled by Judge WHEELER, (30 Fed. Rep. 397.) The questions then considered and decided adversely to the defendant cannot be appropriately reconsidered now. It must be held, therefore, for present purposes, that the complainant is entitled to the relief sought, unless the material averments of the bill are sufficiently met and denied by the answer.

Under the terms of the income mortgage it was the duty of the defendant to keep an account of the earnings, expenses, and net income of the lines included in the mortgage, as distinct from those subsequently acquired. The granting clause in the mortgage subjecting to the lien the "line of railway belonging or hereafter to belong" to the defendant is qualified by the description of the line which follows it: and the words "hereafter to belong" refer to such lines between the specified termini as the company did not then own,—like the road from Chicago to Dalton then leased by the company, and constituting the link by which its line of railway extended from Chicago to Danville. If the mortgage provides expressly or by implication that the board of directors are to set apart the income of the railway lines particularly described for the payment of the maturing interest upon the bonds, the bondholders are entitled to that income; and their pledge is not to be transmuted from one upon the earnings of a particular line of railway to one upon the earnings of a system of which the line may be a part. This would dilute their security upon a designated fund into a nebulous lien upon the profits of such new enterprises as the corporation might see fit to undertake. The terms of the mortgage are that in ascertaining net earnings there is to be deducted from gross income expenditures or liabilities for ordinary expenses, interest, or sinking-fund requirements, and for renewals, repairs, and betterments requisite to maintain the line of railroad in a first-class condi-

tion. All this detail of specification would be unnecessary if the mortgage were not intended to define carefully what expenses and liabilities may be treated as an offset to gross income, and limit the offset to those incurred in the operation and improvement of the particular lines described. Within this limitation the amount that may be appropriated for the specified objects, and the manner in which the railway lines may be managed, are matters resting exclusively in the discretion and good faith of the directors.

An income railway mortgage, although it is a pledge of tangible property for the payment of the principal sum, is, as a security for the payment of interest, but little more than the pledge of the good faith of the company in managing its lines. It necessarily contemplates that such improvements as seem necessary to the efficient use and operation of such property, and such alterations in the *corpus* as appear desirable, are to be made, at the discretion of the directors; and unless it contains some limitations upon the powers of the directors, express or implied, the right of the company to conduct its operations as it may see fit, subject only to the conditions of its organic law, is unqualified; and consequently the company can lawfully extend its lines, acquire new ones, discontinue old ones, and thus essentially change the earning capacity of the property. It is important, therefore, that any limitations upon the general powers of the directors, intended to define the boundaries of their discretion, should be given due effect if such a mortgage is to afford any substantial security to bondholders for the payment of their interest; and if these are found in the instrument they should not be nullified by a latitudinarian interpretation calculated to relegate bondholders to the position of stockholders. They are not stockholders, but creditors, who contract upon the assurance that the income fund upon which they rely when they purchase the bonds is to continue to exist during the life of the mortgage. When the mortgage implies that the income fund is to consist of the profit of the future transactions of the company from all sources, as may be the case when the property pledged to the fund includes not only what is owned by the company at the time of the execution of the instrument, but also all that may be thereafter owned or acquired by the company, the bondholders cannot complain if, when the interest periods occur, it is found that the profits which would have been made by operating the original lines exclusively have been depleted by the losses arising from the operation of new lines in conjunction with the old ones. *Day* v. *Town of New Lots*, 107 N. Y. 148, 13 N. E. Rep. 915; *Buck* v. *Seymour*, 46 Conn. 156. But where, as here, the terms are that specific lines are granted, and that income is to be ascertained by taking the gross earnings of those lines and deducting from them specified expenses and liabilities, the bondholders are entitled to hold the company to its promise. It is to be inferred that they have invested upon the faith of the earning capacity of the particular property, basing their expectations for the future upon the results of the past, and not intending to trust wholly to the integrity and good judgment of a body of directors whose *personnel* may change at any time.

The case, then, presents the question whether the board of directors are justified in deducting the expenditures and expenses, including interest charges, incurred by operating the new lines acquired by the company from the earnings of the original lines. Clearly they are not, unless these new lines are to be deemed "betterments requisite to maintain the line of railway [described] in first-class condition." The mere statement of the proposition is the only answer it requires. If it is said that the successful operation of the old lines may have demanded the acquisition of new ones, the answer is that, nevertheless, the income fund consists of the earnings of the old lines, less the expenses of operation, and the bondholders have the right to look to that fund exclusively. The mortgage intrusts the directors with a wide discretion in determining what is to be treated as net income. Their conclusions, when embodied in a resolution of the board, are not vitiated by an error of judgment, and can only be disturbed when the circumstances establish bad faith. But their duty to the bondholders requires them to make an honest effort to ascertain the net earnings of the original lines at the several interest periods; and this they have not done; nor can they do so practically, unless a separate account of the earnings and expenses of those lines are kept. *Barry* v. *Railroad Co.*, 27 Fed. Rep. 1; *Mackintosh* v. *Railroad Co.*, 34 Fed. Rep. 582. The perfunctory ceremony of passing a resolution that no income has been earned, without an attempt to ascertain the fact, is not a compliance with the letter or the spirit of the contract. The condition in the bonds and mortgage, whereby the interest is payable as and when fixed by the action of the board of directors, does not preclude the bondholders from all remedy whenever the directors improperly neglect or refuse to take the necessary action. No corporation can shelter itself behind a contract that it shall not be liable for its own wrongful acts.

It has seemed proper to consider these questions fully, because both parties are anxious for the opinion of the court as to their respective rights and obligations under the bonds, and the argument at the bar has been principally directed to the discussion of them. Nevertheless no relief can be granted to the complainant under the present bill, because, having alleged a case of fraud, he cannot be permitted to support it on any other ground. *Wilde* v. *Gibson*, 1 H. L. Cas. 626; *Eyre* v. *Potter*, 15 How. 56; *Fisher* v. *Boody*, 1 Curt. 206; *Price* v. *Berrington*, 7 Eng. Law & Eq. 254. The present bill does not even proceed upon the ground of a willful neglect of duty on the part of the directors of the defendant to make the ascertainment and adjudication respecting the income provided for in the mortgage, but it charges them with actual fraud and conspiracy designed to compel the complainant to surrender his bonds and accept consol bonds in lieu, and alleges the failure to make the ascertainment as one of the evidential facts supporting the conspiracy. There is nothing in the facts, as they appear by the pleadings, to justify any inference of *mala fides* on the part of the directors; and it would seem that they have acted under an honest misapprehension of their duties to bondholders, supposing that the position contended for by their counsel

was correct, and that the income of all the lines, the new as well as the old, was the fund· pledged by the mortgage. The bill is therefore dismissed, with costs.