## CENTRAL TRUST CO. OF NEW YORK v. WORCESTER 'CYCLE MFG. CO. et al.

(Circuit Court of Appeals, Second Circuit. April 4, 1899.)

### No. 138.

1. MORTGAGE—FORECLOSURE—EVIDENCE.

In a suit to foreclose a mortgage given to secure certain bonds, where the mortgage recited that defendant company had an indebtedness, and the treasurer testified that the bonds were issued in exchange for the notes of the company, that the notes had been issued for cash received, that the notes passed through the hands of the witness, that a number of the bonds had been pledged to parties who made demands on the witness for payment of the coupons due, and that the demand had not been complied with, in the absence of evidence to the contrary, this is sufficient to show that the bonds were issued for value, and the holders were entitled to their rights under the mortgage.

2. CHATTEL MORTGAGE—DESCRIPTION OF PROPERTY.

Under Gen. St. Conn. § 3016, providing that when any manufacturing establishment, with its machinery, shall be mortgaged, and a particular description of the personal property executed and recorded, the retention of such personal property shall not impair the title of the mortgagee, a mortgage was given to secure "all machinery, apparatus, tools, appliances, and other plant, materials, fuel, devices, patents, patent rights, and all other property, real, personal or mixed, of any name or nature whatsoever," of the party of the first part, situated in the town, "whether now owned or hereafter acquired by such party." *Held* not the particular description required by the statute, so as to render the mortgage valid where the mortgagor remains in possession.

3. RECEIVER IN FORECLOSURE.

The appointment of a receiver in a foreclosure suit does not constitute the taking possession of the property by the chattel mortgagee, as against other creditors, so as to cause a surrender and delivery of the property by the owner to the mortgagee, and perfect his rights before the intervention of other claims then made, but the receiver holds for all parties interested.

4. PREMATURE FORECLOSURE.

Where a mortgage provides that until default for six months the party of the first part shall be permitted to possess and enjoy and operate the property, and that the trustee named therein, on written request of the holders of the bonds, at his option, and whenever entitled to do so by the terms thereof, may institute proceedings to foreclose this mortgage, a suit to foreclose for unpaid interest is prematurely brought unless the default has continued for six months.

5. SAME—OBJECTIONS WAIVED.

A provision in a mortgage that on default an action to foreclose shall not be brought within six months is for the benefit of the mortgagor, and creditors cannot object where foreclosure is sought within that time.

Appeal from the Circuit Court of the United States for the District of Connecticut.

This cause comes here upon appeal from a decree of the circuit court, district of Connecticut, dismissing the bill, which was brought

to foreclose a mortgage made by defendant corporation to complainant as trustee for bondholders. The facts sufficiently appear in the opinion.

Michael H. Cardozo, for appellant.

Seymour C. Loomis and E. C. Perkins, for appellees.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. The Worcester Cycle Manufacturing Company, a New Jersey corporation, was heretofore engaged in business in the state of Connecticut, owning certain real and personal property therein. On or about September 1, 1896, it executed a mortgage to the complainant trust company to secure a proposed issue of $500,000 5 per cent., 25-year gold bonds, of which, as the complaint avers, $320,000 was issued. The property thus mortgaged is described as:

"All and singular, the lands and premises, factories, shops, and other structures, and the appurtenances thereunto belonging, and the machinery, apparatus, and other plant, constructed and to be constructed, together with all the real estate and other property, real, personal, or mixed, of the party of the first part, more particularly described as follows: [Here follows a specific description of several parcels of real estate situated in Massachusetts, and in the town of Middletown, Connecticut]. And also all the real estate, lands, storage, grounds, yards, and other premises, all factories, works, shops, warehouses, sheds, and all other structures and erections of the said party of the first part situated in the said city of Worcester, and in said city of Middletown, whether now owned or held, or hereafter to be owned, constructed, or acquired. And also all machinery, apparatus, tools, appliances, and other plant, materials, fuel, devices, patents, patent rights, and all other property, real, personal, or mixed, of every name or nature whatsoever, of said party of the first part, situated in said city of Worcester, and in said city of Middletown, whether now owned, or hereafter to be owned, acquired, or used, by said party of the first part. And also all the things in action, contracts, claims, and admissions of the said party of the first part, whether now owned, or hereafter to be acquired, in connection with or relating to the said lands and premises, factories, shops, and other structures, and said plants, machinery, and apparatus. And also all the licenses, rights, privileges, consents, easements, and franchises of the said party of the first part, including the franchise to be a corporation, whether now possessed or hereafter to be acquired by the said party of the first part, and used or enjoyed in connection with the said lands and premises, factories, shops, and other structures, and said plant, machinery, and apparatus."

The mortgage contains the provisions usually found in documents of this character. Such of them as are relevant to a decision of this case will be hereafter referred to. The mortgage was duly recorded in the office of the town clerk of Middletown on or about September 5, 1896. The first installment of interest came due March 1, 1897. The company defaulted in its payment, and also failed to pay the taxes upon its real estate. Thereupon, and in June, 1897, this suit to foreclose the mortgage was brought. Defendant answered the bill August 2, 1897; averring that all the matters and things in said bill stated are true. A receiver of the property described in the bill was appointed. The record does not disclose the date of this order, nor the date of its entry. It may fairly be inferred, however, that the receiver was appointed some time in June or July, 1897. The precise date is immaterial. He forthwith entered into possession

of the property, and has since held the same. On November 5, 1897, the appellee Goodrich was appointed trustee in insolvency of the cycle company by the probate court of Middletown, Conn. Thereupon Goodrich, as such trustee, filed a petition in the United States circuit court for the district of Connecticut, seeking to intervene in the foreclosure suit. The petition was granted (86 Fed. 35), with a proviso that the intervener should be heard only as to the sufficiency of the bill. Upon appeal this court modified the decision of the circuit court, so as to allow the intervener "to be heard by proof and argument to support the claim of the parties whom he represents, viz. the creditors of the defendant." He thereupon filed an answer, and the issues raised were disposed of in the circuit court at final hearing upon pleadings and proofs (90 Fed. 584, 91 Fed. 212); and it is from such decision that this appeal is taken.

The contention of the trustee, Goodrich, is: First, that the mortgage indebtedness was not sufficiently proved; second, that the mortgage, when made, was void as against the creditors of the mortgagor; third, that the appointment of a receiver, and his taking possession of the property, were not equivalent to a taking possession thereof by the mortgagee; fourth, that the suit to foreclose the mortgage was prematurely brought.

1. The defendant cycle company was formed by the consolidation of two New Jersey corporations, under an agreement and act of merger which provided that the property of the two constituent companies should become the property of the consolidated company, and that all debts and liabilities of either of said corporations should thenceforth attach to said new or consolidated company, and might be enforced against it to the same extent as if said debts and liabilities had been incurred or contracted by it. The minutes of the meeting of the stockholders of the new company of August 20, 1896, and of the meeting of its directors of August 24, 1896, both showed that the issuing of the bonds and the making of the mortgage were duly authorized; and on September 3, 1896, a resolution was adopted authorizing the delivery of the 320 bonds to the defendant cycle company. They were so delivered by the trust company,—being handed over to the treasurer of the cycle company,—and none of them have been returned for payment or cancellation. The mortgage recites that the defendant company had a floating indebtedness, incurred in its business, amounting to upwards of $300,000. The treasurer testified that the floating indebtedness referred to was the indebtedness of the old company; that the 320 bonds were all issued in exchange for notes of the old company; that these notes had been issued by the old company for cash received principally from Camille Weidenfeldt, or Lawson, Weidenfeldt & Co.; that, except for some that was received prior to his term of office (he was treasurer of the old company from January 1, 1896), the cash advanced on the notes passed through witness' hands; that quite a number of the bonds issued for these notes were pledged with the American Exchange Bank, Seligman, and others, who made demand upon the witness for payment of the coupons due on March 1, 1897. This certainly made out a prima facie case; and, in the absence of any evidence impugning the good

faith of the transaction, it must be held that the bonds were issued for value, and that the holders are entitled to the rights and remedies which the mortgage secured to them.

2. In Rood v. Welch, 28 Conn. 157, it is stated that:

"By the well-settled law of Connecticut, a mortgage, as well as an absolute sale, of personal property capable of immediate delivery, is, as against creditors and subsequent purchasers, fraudulent and void, unless the possession of the property accompanies and follows the transfer."

In that state, however, as in others, the modern requirements of business have led to provision being made by statute for the recording of mortgages of a certain kind of chattels, as a substitute for an open change of possession. The relevant clauses of that statute (section 3016, Gen. St. Conn.) are as follows:

"When any manufacturing or mechanical establishment, together with the machinery, engines, or implements, situated and used therein, * * * shall be mortgaged by a deed containing a condition of defeasance, and a particular description of such personal property, executed, acknowledged and recorded as mortgages of lands, the retention by the mortgagor of the possession of such personal property shall not impair the title of the mortgagee."

The description of personal property in the mortgage now under discussion, which, it is contended, is a "particular" one, within the meaning of this statute, reads as follows:

"And also all machinery, apparatus, tools, appliances, and other plant, materials, fuel, devices, patents, patent rights, and all other property, real, personal, or mixed, of every name or nature whatsoever, of said party of the first part, situated in the * * * said city of Middletown, whether now owned, or hereafter to be owned, acquired, or used, by said party of the first part."

Whether this is a "particular description," within the meaning of the Connecticut statute, is to be determined by reference to the decision of the Connecticut supreme court of errors. Gaylor v. Harding, 37 Conn. 508, was an action in trover for a quantity of machinery and manufacturing implements. Plaintiff was the trustee in insolvency of a woolen manufacturing company. Defendants claimed the property under a mortgage of the insolvents made prior to the insolvency, and had taken possession under a decree in foreclosure in a suit begun subsequently to the trustee's appointment. The mortgage covered a certain piece of land, with the buildings thereon, "together with, all and singular, the privileges and appurtenances thereunto belonging; together, also, with all the machinery, tools, and implements contained in the said buildings; * * * also, all machinery, tools, and implements which may from time to time be added to or substituted for those now upon said premises and in said buildings; a schedule of the principal part of said machinery, tools, and implements being hereunto annexed." It appears from the statement of facts that none of the property claimed in the trustee's suit was more particularly described in the schedule, but that certain pieces of machinery included in the claim are the same, or similar in kind, and used for similar purposes with some of those enumerated in the schedule appended to the mortgage. The remaining articles claimed were all in use in the mill, or liable to be required for use at any time, and were necessary to the successful and convenient operation of

the mill. A part of the property in dispute was used, or designed to be used, as implements of, or in connection with, the machinery named in the schedule. The court says, "None of the property in dispute is particularly described in the mortgage deed, nor enumerated in the schedule thereto attached," and holds that defendants can take no benefit of the provisions of the statute. Judgment was directed for the value of "so much of the property described in the declaration as is personal estate"; advising that a further hearing be had, to ascertain whether "portions of the property are not permanent fixtures, which pass as part of the real estate." This decision seems determinative of the case at bar. Our attention is called to no case in any way qualifying its conclusion that mere general words of description are not enough, but that under the statute there must be sufficient to identify the property. The two authorities cited on complainant's brief do not touch the point. In Rowan v. Manufacturing Co., 29 Conn. 282, it appears from the statement of facts that the mortgage "specifically described" a large quantity of machinery, and the title of the mortgagee to certain after-acquired property was held good because said mortgagee had afterwards taken possession of the factory with such subsequently acquired property. "Whatever effect was to be given to the provision in itself, it became operative upon possession being taken by the mortgagee." Walker v. Vaughn, 33 Conn. 583. In Buck v. Seymour, 46 Conn. 156, the question as to sufficiency of description arose, not under the General Statutes, but under the charter of a railroad company. The description of the personal property in the case at bar is certainly no more "particular" than it was in Gaylor v. Harding, supra; and the mortgage as to personal property must be held void, because unaccompanied with possession, and not in accordance with the provisions of the statute. If void for imperfect description as to the personal property in possession, it is difficult to see upon what principle it could be sustained as to similar property subsequently acquired.

3. It is held, however, in Connecticut, as in other states, that a surrender and delivery of the property by the owner to the mortgagee, before the intervention of any other claims upon it, perfect the right of the mortgagee to the property, irrespective of any infirmity in the description in the mortgage deed. Buck v. Seymour, 46 Conn. 156. It is contended by the defendant here that the taking possession of the property by the receiver appointed by the court is in all respects the same as if the mortgagor had turned over the property to the mortgagee, and in support of that contention a long line of authorities is cited in which the phrase is used, "the possession of the receiver is the possession of the party ultimately held to be entitled to the property." The appellant, we think, gives too much weight to a form of words which may have been used appropriately enough in the cases from which they are cited, but which certainly were not intended to be authority for the proposition that the intervention of the court operates to change the rights of any parties to the suit, whether they were originally parties, or are made such by subsequent order of the

court. The sense in which the words quoted were understood by the courts which used them is apparent from the following excerpts:

"The effect of the appointment [of a receiver of mortgaged premises] is not to oust any party of his right to the possession of the property, but merely to retain it for the benefit of the party who may ultimately appear to be entitled to it; and, when the party entitled to the estate has been ascertained, the receiver will be considered his receiver." Wiswall v. Sampson, 14 How. 52. "He is an officer of the court. His appointment is provisional. He is appointed in behalf of all parties, and not of the complainant or of the defendant only. He is appointed for the benefit of all parties who may establish rights in the cause. The money in his hands is in custodia legis for whoever can make out a title to it. It is the court itself which has the care of the property in dispute." Booth v. Clark, 17 How. 322. "A receiver derives his authority from the act of the court, and not from the act of the parties at whose suggestion or by whose consent he is appointed, and the utmost effect of his appointment is to put the property from that time into his custody as an officer of the court, for the benefit of the party ultimately proved to be entitled, but not to change the title, or even the right of possession, in the property." Chicago Union Bank v. Kansas City Bank, 136 U. S. 223, 10 Sup. Ct. 1013.

See, also, High, Rec. § 134; Coates v. Cunningham, 80 Ill. 467.

The property is taken by the court, and is put into the hands of its officer to hold for the benefit of "whom it may concern." He holds and manages it for the benefit of the party to whom the court may ultimately decide that it belongs, but it would be a perversion of the whole theory of custodia legis if the mere appointment of a receiver were itself determinative of that "ultimate decision." The proposition here contended for is an instance of reasoning in a circle. Conceding the soundness of the conclusion expressed ante,—that as to the personal property the description was imperfect, and the mortgage therefore fraudulent as to creditors, the appellant's argument may be thus stated: "I cannot show myself to be ultimately entitled to the property unless I can prove a mortgage superior to the rights of creditors. The mortgage I have proved is void as to creditors unless I can show that I have taken possession. The possession of the receiver must be considered to be my possession only because I am ultimately held to be entitled to the property, but the reason why I am ultimately held to be entitled to the property is the very assumption that the receiver's possession is my possession." The property is put into the hands of the receiver only to preserve it from harm, to secure its accretions, and to insure its delivery unimpaired to the successful litigant, but the custody of the receiver should not be held to make any change in the status of any litigant's title. In the case at bar, so far as the personal property is concerned, it cannot be said that the mortgagee is the successful litigant. The creditors, in the person of their trustee, Goodrich, who has been made a party litigant, have prevailed, since they have shown that, down to the time the court seized the property, nothing which mortgagor and mortgagee had done had operated to impair their rights to proceed against the res. If the mortgage were fraudulent as against creditors then, it remains fraudulent, although an officer of the court has taken charge of it temporarily.

4. It is contended that the suit was prematurely brought. The mortgage provides (article 2) that:

"Until default shall have been made in the performance of, all and singular, the covenants and agreements, * * * and until any such default shall have continued for a period of six months, the said party of the first part shall be suffered and permitted to possess, manage, operate, and enjoy the property, * * * and to take and use the incomes, rents," etc., "* * * as if this indenture had not been made."

Article 3 provides that, if default in the payment of interest shall continue for six months, the principal may become due. Article 4 provides that in case default shall be made in the payment of coupons, and shall continue for six months, the trustee under the mortgage may enter into possession. Article 5 provides that if any default shall be made, and shall continue as aforesaid, the trustee may sell and dispose of the property. Article 6 declares that:

"The provision of article 5 is cumulative to the ordinary remedy of foreclosure in the courts, and the trustee herein may, at his discretion, and shall upon the written request of the holders of a majority in value of the bonds, * * * at the option of said trustee, and whenever entitled to do so by the terms thereof, institute proceedings to foreclose this mortgage," etc.

If the only provisions here were those contained in articles 3, 4, 5, and 6, as above set forth, the authorities cited by complainant (Mercantile Trust Co. v. Missouri, K. & T. Ry. Co., 36 Fed. 221, and Same v. Chicago, P. & St. L. Ry. Co., 61 Fed. 372) would be in point. But in the latter of these cases the second article reserves possession to the mortgagor "until default," not until default and six months' continuance thereof. In the former there is no article containing provisions similar to those contained in article 2 of the mortgage now before us. Moreover, in neither of these cases, nor in any of the others cited (Dow v. Railroad Co., 20 Fed. 260; Farmers' Loan & Trust Co. v. Winona & S. W. Ry. Co., 59 Fed. 957; Same v. Chicago & N. P. R. Co., 61 Fed. 543), did the mortgage contain any equivalent of the following clause, which is here found (as a proviso to article 6) at the close of all the above-cited provisions as to rights and remedies in the event of default:

"Neither the trustee nor the holder or holders of the bonds intended to be hereby secured, or any of them, shall sell the premises hereby mortgaged, or intended to be, or any part thereof, or institute any suit, action, or proceeding in law or equity for the foreclosure hereof, or for the appointment of a receiver, otherwise than in the manner herein provided."

It would seem that language could be no plainer; and we are clearly of the opinion that a suit to foreclose, even for unpaid interest, is prematurely brought, unless such default has continued for six months. These provisions, however, postponing foreclosure for six months, are wholly for the benefit of the mortgagor. They are intended to secure to it an opportunity to provide means to pay up its indebtedness, if it can and if it chooses. It need not avail of the provisions, however; and, if it does not take advantage of this objection, no one else can. Guaranty Trust & Safe-Deposit Co. v. Green Cove Springs & M. R. Co., 139 U. S. 137, 11 Sup. Ct. 512. Other creditors have nothing to do with these clauses in the mortgage. They were not inserted for their benefit, and they cannot be heard to de-

mand that the mortgagor shall insist upon the objection, so as to secure further time, when further time is neither required nor wished for. The situation is not changed by the circumstance that the creditors are represented by the trustee in insolvency of the debtor. To hold that he may insist upon using his position as representative of the debtor to harass and delay the secured creditor, in the interest of the unsecured creditors, when these very unsecured creditors themselves, if individually intervening, would have no right so to do, would be a perversion of equity. Inasmuch as the mortgagor defendant has not raised the objection that the suit is prematurely brought, the clauses above cited are no bar to recovery.

The decree of the circuit court is reversed, with costs, and cause remanded, with instructions to proceed with the foreclosure as to the real estate, and to dismiss the bill as to the personal property. The circuit court will determine, as to any disputed item, whether it is to be considered real or personal property, and will dispose of it in conformity to this opinion.