## In re COLUMBIA SHOE CO.

### KREISHER v. SPIEGEL.

(Circuit Court of Appeals, Second Circuit. March 28, 1923.)

No. 157.

Assignments ⬤⇒89—Bankruptcy ⬤⇒288(1)—Principal and agent ⬤⇒42—Accounts held not assigned; power of attorney revoked by bankruptcy; summary proceedings held proper procedure to compel creditor to turn over money of bankrupt collected under power of attorney after bankruptcy.

Where bankrupt shoe company had agreed with seller of leather to it that, in consideration of seller's extension of credit, it would pay him either in shoes or accounts of its customers, and gave such creditor a power of attorney to collect its accounts with customers, the agreement did not transfer the title to the accounts to the creditor, nor was his power of attorney a power coupled with an interest, but was revoked by operation of law by the filing of the bankruptcy petition; hence where the creditor, by virtue of the power of attorney, collected accounts due the bankrupt after the filing of the bankruptcy petition, his claim to the proceeds of such collection was colorable, and the trustee of the bankrupt was entitled to reclaim from the creditor by summary proceeding in the bankruptcy court to compel the creditor to turn over such proceeds.

Petition to Revise Order of the District Court of the United States for the Southern District of New York.

In the matter of the Columbia Shoe Company, bankrupt. Application of Clarence E. Kreisher, trustee in bankruptcy, to compel Edward Spiegel to turn over certain moneys to the trustee was denied, and the trustee petitions to revise the order. Order reversed, with instructions.

Petition to revise an order denying the application of the trustee to compel Spiegel to turn over certain moneys to the trustee. The petition of the trustee alleged that an involuntary petition in bankruptcy was filed in the Middle district of Pennsylvania on October 13, 1921, against Columbia Shoe Company, which was thereafter adjudicated a bankrupt, and that appropriate ancillary proceedings were taken in the District Court for the Southern District of New York; that at the time the petition was filed Ajax Shoe Company was indebted to the bankrupt in the sum of $3,057.90, and N. H. Smith Company was indebted in the sum of $849; and that on October 15, 1921, Spiegel, with knowledge of the filing of the petition, collected from Ajax Shoe Company $1,954.12 and from M. H. Smith Co. $418.07, which he improperly retained. Spiegel, in an affidavit in opposition, did not deny knowledge of the filing of the petition, nor did he deny that he collected the amounts, supra, but insisted that he had the right to collect and retain the same.

Spiegel set forth that he was engaged in the leather business in New York City; that in March, 1921, he entered into an agreement with the bankrupt, whereby he agreed to extend credit to it in the sum of $25,000; that to effectuate the agreement the bankrupt gave him power to collect all sums due the bankrupt and to draw against the funds so collected; and that at the time of filing the petition in bankruptcy, the bankrupt was indebted to him in a sum exceeding $3,000. Spiegel's answering affidavit then concluded: "Your petitioner collected the sum claimed by the trustee under the general agreement set forth above under date of March 21, 1921 [evidently meant to be March 25], and applied same upon the indebtedness of the bankrupt to him." The three papers annexed to and made part of Spiegel's affidavit, upon which he rested his right to retain the sums collected, are as follows:

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

289 F.—30

### Agreement of March 25, 1921.

"This arrangement, made between Edward Spiegel and David J. Finkelstein. Edward Spiegel, of E. Spiegel, hereby agrees to extend credit to David Finkelstein, of the Columbia Shoe Company, up to $25,000, twenty-five thousand dollars, for leather to be bought from E. Spiegel & Co. at a market price to be agreed upon. The leather is to be shipped in installments of $5,000, more or less, at one time.

"David J. Finkelstein in turn agrees, for each installment of leather to be shipped to the Columbia Shoe Company, to forward shoes at an agreed market price if E. Spiegel & Co. see fit that they can sell them. If E. Spiegel & Co. do not take shoes in payment of the leather, then it is agreed that, after the leather is worked up and the shoes are sold, the Columbia Shoe Company can either turn over these accounts, to whom the shoes are sold, to E. Spiegel & Co., or after the money is collected by the Columbia Shoe Company they are to turn over this money to E. Spiegel & Co. E. S. D. J. F. C. S. Co."

### Letter of Attorney.

"Know all men by these presents, that Columbia Shoe Company, by its duly authorized officers, doth hereby make, constitute, and appoint E. Spiegel & Co., of the city of New York, its true and lawful attorneys, for it and in its name to collect and receive all such accounts and moneys as may be due this corporation from its patrons in the city of New York, and when so collected to deposit the same in such bank, banks, or depositories as to our said attorneys may seem expedient, and to draw checks and drafts against said funds so to be deposited, and to do all lawful acts requisite for effecting the premises, and hereby ratify and confirm all that our said attorneys shall do therein by virtue of these presents.

"In witness whereof, the said corporation has caused to be set hereto its corporate name by the hand of its president, and to be hereto affixed its corporate seal, duly attested by its secretary, this twenty-seventh day of April, A. D. 1921.                              Columbia Shoe Company,
                                                     "D. L. Finkelstein."

### Certificate.

"I, C. D. Rupp, secretary of the Columbia Shoe Company, * * * hereby certify that at a meeting of the board of directors of said corporation, duly * * * held on the twenty-seventh day of April, A. D. 1921, the following resolution was unanimously adopted: 'Resolved, that the president and secretary of this corporation be and are hereby authorized, empowered, and directed to appoint E. Spiegel & Co., of the city of New York, attorneys in fact for this corporation to receive and collect all such moneys and accounts as may be due this corporation from patrons in the city of New York, to deposit said money in the name of and for the account of this corporation in such bank, banks, or depositaries as to said E. Spiegel & Co. may seem expedient, and in the name of this corporation to draw, sign, execute, and deliver checks or drafts against such deposits!'"

Myers & Goldsmith, of New York City (Mortimer C. Rhone, of Williamsport, Pa., of counsel), for petitioner.

Allan D. Emil, of New York City, for respondent.

Before ROGERS, HOUGH, and MAYER, Circuit Judges.

MAYER, Circuit Judge (after stating the facts as above). We have set forth the three papers supra, so as that the questions involved may be fully understood. We pass by the contention that the agreement of Spiegel was with Finkelstein, and not with Columbia Shoe Company. We assume that it was with the latter. Spiegel, in his affidavit, did not state that the money he collected from Ajax and Smith was for shoes made out of the leather furnished under the agreement of March

25th; but we lay aside this and certain other questions raised in order to reach the fundamental points presented.

It being admitted that, at the date of the filing of the petition in bankruptcy, Spiegel did not have possession of the money in controversy, we next inquire (1) whether he had title thereto; and (2) whether or not his claim is colorable. In the agreement of March 25, 1921, there is no language of the kind familiarly used in transferring accounts, such, for instance, as found in Hub Carpet Co., 282 Fed. 12. If Spiegel did not take shoes in payment of leather, then Columbia Shoe Company could either turn over accounts to Spiegel, or collect the money due it and turn over the money thus collected to Spiegel. Such an agreement did not presently assign the accounts to Spiegel, nor transfer the title to the accounts to Spiegel. It was nothing more at best than an *agreement* to turn over to Spiegel the accounts before collection or the proceeds after collection. No one could seriously urge that, by virtue of the agreement of March 28th, Spiegel could have maintained an action for conversion against Columbia Shoe Company in event of breach.

The power of attorney of April 27th added nothing to title. If anything, it denied title. It merely permitted Spiegel to act as attorney in fact for Columbia Shoe Company, so as to enable Spiegel to make collections and to deposit in the corporation's name and to draw drafts, etc., in its name. This power of attorney was not in any sense a power coupled with an interest. Such a power, of course, presupposes a legal interest in the res over which the power is to be executed. 31 Cyc. 1043. In this case, the situation as to revocation of the power of attorney would, of course, have been different, if Spiegel had had title to the accounts.

When the petition was filed, the property of the bankrupt was at once in custodia legis, and the power of attorney was revoked by operation of law. Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405; Lazarus v. Prentice, 234 U. S. 263, 34 Sup. Ct. 851, 58 L. Ed. 1305. Spiegel, therefore, had not power nor right to interfere with the bankruptcy court, by taking and withholding property, actually or constructively, in the possession of the bankruptcy court.

In the case of In re Midtown Contracting Co., 243 Fed. 56, the adverse claimant had taken possession of the property prior to bankruptcy, and in all the cases, where summary proceedings have not been permitted, it will be found that the property prior to bankruptcy had been owned or possessed by the party adverse to the trustee prior to bankruptcy. For illustrations see Matter of Wood (C. C. A.) 278 Fed. 355; Matter of Eddy (D. C.) 279 Fed. 919; Charles H. Brown Paint Co. v. Bockhold (C. C. A.) 269 Fed. 139; Matter of Franklin Brewing Co. (C. C. A.) 263 Fed. 512; In re Joseph R. Marquette, Jr., 254 Fed. 419, 166 C. C. A. 51; In re Phœnix Planing Mill (D. C.) 250 Fed. 898.

Where, however, the adverse claimant cannot show title and has not possession at the time of filing the petition in bankruptcy, his claim to hold money collected after the date of filing a petition in bankruptcy must be regarded as colorable. The mere fact that an argument can be made in favor of a claimant does not render a debated question of

law a substantial question. When it appears, as in this case, that under no tenable theory can property in custodia legis be taken by an outsider, then the right to summary determination in the bankruptcy court is clear. The fundamental (but not the only) test is possession.

Where, as here, the property in the eyes of the law was in possession of the bankruptcy court, procedure should be to move to reclaim in appropriate proceedings, and not to do acts which in effect amount to taking away property from the court's possession.

The order is reversed, without costs, and the District Court is instructed to grant the application of the trustee.