## In re KOLB CARTON CO.

## Appeal of NORWICH SAV. SOC. et al.*

(Circuit Court of Appeals, Second Circuit, January 4, 1926.)

### No. 167.

**1. Bankruptcy ⬅288(1)—Bankruptcy court has jurisdiction to adjudicate right of trustee to property delivered to trustee and afterwards withdrawn from his custody.**

Bankruptcy court has jurisdiction, on order to show cause, to adjudicate right of trustee in bankruptcy to property which was delivered to trustee and afterwards withdrawn from his custody, even though not in possession of bankruptcy court as constructive possession is sufficient.

**2. Chattel mortgages ⬅18—Mortgage on after-acquired property, forming part of establishment, held to give good title to mortgagee out of possession as against general creditors.**

Mortgage on machinery covering after-acquired property, forming part of establishment and situated and used therein, which complied with Gen. St. Conn. 1918, §§ 5206, 5208, *held* to give good title to mortgagee out of possession as against general creditors.

**3. Bankruptcy ⬅185—Trustee in bankruptcy takes no greater title in mortgaged property than bankrupt.**

Mortgage on machinery of factory, covering after-acquired property used in establishment, *held* good as between parties, and trustee in bankruptcy took no greater title than bankrupt mortgagor.

**4. Corporations ⬅428(7)—Lessee corporation, having same president as company from whom lease of mortgaged property was made, held to have knowledge of existence of mortgage.**

Bankrupt corporation, having same president as company from whom it leased mortgaged property, *held* not a purchaser without knowledge of existence of the mortgage.

**5. Chattel mortgages ⬅291—Lessee cannot sustain claim to mortgaged property after sale under foreclosure to which lessor was a party.**

Bankrupt, as lessee of mortgaged property, cannot sustain claim to property after lawful sale under foreclosure of mortgage to which lessor corporation was a party.

**6. Costs ⬅42(1)—No costs will be awarded against party alleged to have converted property, where he had offered to pay for property actually found converted.**

Where purchaser of mortgaged property of bankrupt had converted certain property, and in proceedings for alleged conversion had offered to pay for such property, no costs in proceedings will be awarded against him.

Petition to Revise Order of and Appeal from the District Court of the United States for the District of Connecticut.

*Mandate amended 11 F.(2d) ——.

In the matter of the Kolb Carton Company, bankrupt. The trustee petitioned for an order restraining the Norwich Savings Society and others from interfering with the transfer of certain property sold by the trustee, and to review an order adjudging payment of damages for alleged conversion of certain property, respondents appeal and petition to revise. Reversed, with directions.

Frederick H. Wiggin, of New Haven, Conn., for appellants Norwich Savings Society and Huntington.

Geary, Davis & Keefe, of New London, Conn. (Arthur T. Keefe, of New London, Conn., of counsel), for Browning and Smith.

Archibald Palmer, of New York City (Jacob J. Lesser, of New York City, of counsel), for trustee.

Before HOUGH, MANTON, and HAND, Circuit Judges.

MANTON, Circuit Judge. The Kolb Carton Company, a New York corporation, having an office in New York and a factory in the district of Connecticut, filed a petition in bankruptcy, and on May 27, 1922, ancillary receivers were appointed in the district of Connecticut. On July 17, 1922, the receivers were authorized to sell the assets belonging to the estate, and in so doing sold, among other things, the tools, parts, wiring, and felts contained in the storeroom at the plant, together with oil there contained in a tank. When the delivery of this property was about to be made in accordance with the terms of sale, the Norwich Savings Society and John P. Huntington are charged with having prevented the delivery of the property, claiming title through the foreclosure of a mortgage made in October, 1919, by the Ironsides Board Corporation to it. Because of this claim, but $37,000 was paid at the sale, and the balance, $13,000, withheld, upon the basis that this was the value of the property which the receivers were unable to deliver. Thereupon the receivers obtained an order or rule against the Norwich Savings Society and Huntington, its attorney. Thereafter, on October 19, 1922, a stipulation was entered into whereby the rule was withdrawn and delivery of the property was to be permitted, and the sum of $13,000 deposited in lieu of the property, to abide the determination of the respective claims thereto. This stipulation was never carried out, and on December 4, 1922, the Norwich Savings Society, in foreclosing the mortgage, caused the property to be sold to the appellant James

E. Smith, who in turn sold it to the Uncas Paper Board Company. The receivers were prevented from delivering the property, and assert damages as a result thereof. In the meantime, one of the receivers was appointed trustee.

It is agreed that, at the time of the adjudication in bankruptcy, there were 3,500 barrels of fuel oil in tanks at the plant, valued at $3,500, and further that this oil was converted by James E. Smith or the Uncas Paper Board Company to their own use. This conversion, however, was prior to the order of the District Court restraining the use of the oil. An offer to pay therefor has been made by the Uncas Company, through its receiver, who was thereafter appointed. Under the terms of the order to show cause, the appellants were merely directed to show cause why they should not be restrained from interfering with the delivery by the trustee of the property said to be owned by him.

[1] It is objected that the court was without jurisdiction. The bankruptcy court did have jurisdiction to adjudicate the right of the trustee in bankruptcy to the property here adversely claimed, even though not in the possession of the bankruptcy court. Constructive possession is sufficient, and it exists where property was delivered to the trustee, but afterwards withdrawn from his custody. Taubel-Scott-Kitzmiller Co., Inc., v. Fox, 264 U. S. 426, 44 S. Ct. 396, 68 L. Ed. 770; In re Columbia Shoe Co. (C. C. A.) 289 Fed. 465. Here the court had the jurisdiction to proceed upon the petition and answer and the claim of possession by the trustee.

The property consisted of the oil mentioned and the parts of machinery, tools, felts, and wiring located in the storeroom on the property. The petition did not ask for money judgment. The respondents appeared and opposed the granting of the injunction. The matter was then referred to a special master, to take the account and report the reasonable value of the property in question used or held by the respondents. The master reported, directing the judgment from which this appeal is taken. His report was confirmed by the District Judge. The question presented is whether the property in the storeroom was covered and subject to the mortgage which was foreclosed, or whether it remained the personal property of the bankrupt. The Norwich Savings Society claimed title to the property by virtue of an after-acquired property clause in the mortgage. The trustee's claim is that the clause

of the mortgage as to this was invalid. The property thus described in the mortgage was as follows:

"Together with all other machinery, shafting, counter shafting, belting, pulley, rolls, felts, piping, valves, gauges, plumbing and heating apparatus, elevators, sprinkler system, tanks, electric switchboards, switches, meters, lamps, wiring, benches, racks, trucks, tools, appliances and spare parts in or upon said premises, and all property hereafter acquired forming a part of this establishment, and connected with or situated and used therein, or any hereafter acquired, substituted machinery or personal property of like nature to the property above described."

On January 21st the bankrupt leased the property from the Ironsides Company, and the master found that it purchased from it the certain materials and supplies contained in the storeroom. He found that the storeroom materials and supplies had been used by the Ironsides Company before the bankrupt came into possession of the plant, and that such parts were used for replacing tools, machinery, and materials. The Savings Society foreclosed its mortgage under a state court decree, and the property included in the mortgage was sold on December 4, 1922. The foreclosure proceeding was commenced in November, 1922.

It appears that the storeroom was a necessary part and adjunct in the operation of the plant of the Ironsides Board Corporation. Parts, pulleys, shafting, etc., contained therein, were replacement parts of the machinery used in manufacturing. It was an integral part of the plant equipment, and was a necessary supply for manufacturing purposes. The storeroom was in existence at the time the mortgage was made on October 17, 1919.

Section 5208 of the General Statutes of Connecticut provides:

"When any manufacturing or mechanical establishment, together with the machinery, engines or implements situated and used therein, or any printing, publishing or engraving establishment, together with the machinery, engines, implements, cases, types, cuts or plates, situated and used therein, or any of the personal property above mentioned, without the real estate in which the same is situated or used, shall be mortgaged by a deed containing a condition of defeasance executed, acknowledged and recorded as mortgages of land in accordance with the laws of this state, if such mortgage so recorded shall provide that any after-acquired property forming a part of the establishment and connected with or situated and used therein, or any after-acquired, substituted machinery or personal property, of like nature to the property included in such mortgage, shall be covered by such mortgage, such mortgage shall be deemed valid and effectual as respects all such after-acquired or substituted property or machinery and the retention by the mortgagor of the possession of such property shall not impair the title of the mortgagee, and such mortgages may be foreclosed under and in accordance with the provisions of section 5206."

Section 5206 of the General Laws of Connecticut provides that certain chattel mortgages are good without possession. In Central Trust Co. v. Worcester Cycle Mfg. Co., 93 F. 712, 35 C. C. A. 547, this court considered section 3016 of the General Statutes of Connecticut of 1888, which provides for the mortgaging of chattels without possession and requires a particular description of such personal property executed, acknowledged and recorded as mortgages of land. The particular description there referred to the chattels as "and also all machinery, apparatus, tools, appliances, and other plant, materials, fuel, devices, patents, patent rights, and all other property, real, personal, or mixed, of every name or nature whatsoever, of said party of the first part, situated in the * * * said city of Middletown, whether now owned, or hereafter to be owned, acquired, or used, by said party of the first part," and it was held that this was not such a particular description as required by the statute, so as to render the mortgage valid where the mortgagor remains in possession. [2] But section 5208 was passed in the session of the assembly in 1911, after the decision referred to. The mortgage in question gave good title to the mortgagee out of possession as against general creditors, because it complied with the sections of both statutes. The description here was as particular a description as could be given, considering the nature of the business. It covered after-acquired property, forming part of the establishment and was situated and used therein. It was drawn with reference to the requirements of section 5208. It was intended that it should be retained for use in the manufacturing plant, and it particularized as to the after-acquired property or substituted property as best could be under all the circumstances. It would hardly be possible to enumerate each piece of machinery or the number of pieces that were kept in the storeroom.

The statute relied upon did not require this. The evidence in the record shows that the parties considered the parts in the storeroom as part of the manufacturing plant, and that it was a necessary part of the machinery for manufacturing paper boards. It was of like nature of the existing personal property included in the mortgage.

The master found that the materials used were for the purpose of replacing tools, machinery, and materials, and were of a like nature to those which were there at the date of the mortgage. The phrase of the statute reveals the legislative intent that the words mean that a mortgagee out of possession of after-acquired property in the manufacturing establishment is protected, if the mortgage contained an after-acquired property clause, and if either of two conditions be satisfied: First, if it form a part of the establishment; and, second, if it be of like nature to existing personal property included in the mortgage. The early decisions of Connecticut (Swift v. Thompson [1831] 9 Conn. 63, 21 Am. Dec. 718) show the pronounced position of the effect of retention of personal property by a mortgagor because of the presumption of fraud from retention of possession having been recognized. However, in the state of Conecticut, in 1832, an act was passed which permitted the mortgagee to remain out of possession of the machinery in the cotton and woolen factory, which industries had grown to great importance in Connecticut. Compilation of 1835, p. 67. Section 5206 was enacted in 1899, Public Acts 1899, c. 177. This permitted mortgaging of presently existing machinery, and changing conditions in modern manufacturing and financing resulted in the enactment of 1911 (section 5208), which provided for the after-acquired property clause, which permitted the mortgaging of after-acquired property.

[3, 4] In Hartford Trust Co. v. Puritan Laundry, 95 Conn. 172, 111 A. 149 (decided 1920), the mortgage was on laundry machinery, but there was no after-acquired property clause. The description did not describe certain designated machinery with extra spare parts, etc., as does the mortgage in the case at bar. It was a general description. The mortgage was held good as between the parties. This case is cited by the respondent and is distinguishable. It is apparent in the case at bar that the parties intended to secure the debt by after-acquired property, which formed part of the establishment and was connected with and situated and used in the manufacturing establishment within the terms of the statute. The mortgage is good as between the parties. Gaylor v. Harding, 37 Conn. 508; Hartford Trust Co. v. Puritan Laundry Co., supra. But for the amendment of 1910 the trustee in bankruptcy took no greater title than the bankrupt, and in these proceedings he remains in that position. York Mfg. Co. v. Cassell, 201 U. S. 345, 26 S. Ct. 481, 50 L. Ed. 782; In re Reading Hat Mfg. Co. (D. C.) 224 F. 786. Indeed, it appears that the bankrupt had the same president as the Ironsides Board Company; it had opportunity for actual knowledge that the property was covered by the bank mortgage when the bankrupt came into possession as lessee. No fraud was practiced upon the bankrupt corporation, nor was it a purchaser without knowledge of the existence of the mortgage.

[5] It appears that the mortgage in question was foreclosed and the judgment entered November 10, 1922. This judgment did not empower or authorize in any way the withdrawal from the sale of any personal property which was at the plant at the time, nor is there claim that the property was withheld from the sale. In the report to the superior court, it appears that the property was sold pursuant to said judgment at public auction to the appellant Smith. This report was accepted, ratified, and confirmed by that court. It was subsequently conveyed to the Uncas Paper Board Company; the receiver of the Ironsides Board Corporation was a party to that foreclosure, and made no objection to the passage of title. The bankrupt, as lessee, cannot now sustain his claim to the property. It was lawfully sold under the foreclosure of the mortgage.

[6] What we have said does not apply to the fuel oil. An offer has been made to pay for this oil, which was used only after a request for its removal, and when it became necessary for the Uncas Board Company to run the boilers of the plant and use their tanks by refilling them with oil. In this way there was a mingling of their own oil with that of the trustee. Since the Uncas Company has offered to pay for the oil, no costs in this proceeding will be awarded against it, but it will be directed to make payment therefor.

Therefore the judgment entered against the appellants, the Norwich Savings Society, John P. Huntington, James E. Smith and Uncas Paper Board Company, for $10,014.-01, will be reversed, but judgment against the receiver of the Uncas Paper Board Company for $3,500 may be entered, without costs.

Decree reversed, with costs.