In re FEE BROS., Inc.

No. 22992.

District Court, W. D. New York.

Jan. 30, 1941.

John J. McInerney, of Rochester, N. Y., for trustee.

Whitbeck, Dye & Holloran, of Rochester, N. Y., for Genesee Valley Trust Co.

KNIGHT, District Judge.

This is an application to review an order of the special master entered May 2, 1940, directing the Genesee Valley Trust Company to pay over to the trustee herein the sum of $4,219.91 claimed to have been unlawfully withdrawn from an account of the trustee with the Genesee Valley Trust Company.

An adjudication of bankruptcy herein was made on March 5, 1935. The Genesee Valley Trust Company (a banking corporation—hereinafter called bank) was a creditor of the bankrupt in the amount of $17,175, holding as security warehouse receipts purporting to cover 20,000 gallons of wine. The bank was not in a position to sell its collateral. In order to realize on this collateral and determine the value of the security to establish its general claim against the estate, if any, the bank made an agreement in writing with the trustee of the bankrupt whereby it authorized the trustee to prepare for sale and to sell such wine. This agreement, among other things, provided that, after the expenses of storing, preparing and selling the wine had been paid, $.75 per gallon should be paid to the bank and the balance into the estate. The agreement refers to an interest in the estate of 2,000 gallons, apart from the 20,000 gallons, but the record does not disclose any other evidence of any interest, and the aggregate of all the wine did not exceed 20,000 gallons.

This agreement is purported to have been approved by the referee in bankruptcy, and assumedly the intention of the parties was to proceed under the provisions of Section 57, sub. h, of the Bankruptcy Act, 11 U.S.C.A. § 93, sub. h. The trustee proceeded to carry out the terms of the agreement, selling a part of the wine at

various times and in various quantities. The sale resulted disastrously financially. The total proceeds from the sale were $4,219.91 less than the expenses of the sale.

■ The bank was a duly authorized depository for bankruptcy funds. Prior to the making of said agreement, the trustee had on deposit with the bank funds of the estate. Shortly after the agreement was made he set up in the bank a separate account. This latter account carried only credits and charges arising out of the agreement. The general deposit account was designated as "Account No. 1" and the special account as "Account No. 2." From time to time there were insufficient funds in "Account No. 2" to meet the expenses incident to the sale of the wine. Checks, however, to meet all expenses were drawn by the trustee. Checks aggregating $4,340.36 were issued by the trustee on account of these expenses and were paid out of "Account No. 1." It is the claim of the trustee that, with the exception of three checks aggregating $700 concerning which it is claimed there was a special arrangement made for its withdrawal from Account No. 1, and for repayment, all checks in Account No. 2, bore the endorsement thereon "Account No. 2" when issued. It is quite obvious, and it is not denied, that the bank had full knowledge of the purpose of setting up "Account No. 2" and its distinction from the general "Account No. 1." It is the contention, however, of the bank that when these checks on account of the wine sale expenses were turned in at the bank none bore the endorsement "Account No. 2" and that the endorsements as they now appear were made after they were deposited and paid. There is a clear dispute upon this question. There is proof and there are circumstances shown which go to support the contention of the bank as to some of these checks. I have particularly in mind the checks bearing the red ink endorsement of an accountant and certain checks showing the account endorsement in close proximity to a bank date endorsement. With the exception of three checks aggregating $198, issued when the referee was absent from his office, all are countersigned by the referee in bankruptcy, and both he and the trustee testified that all checks in evidence bearing the endorsement "Account No. 2" bore such endorsement when issued. There is in the record

proof of other facts and circumstances supporting this testimony. Upon the disputed question, the master has found that these questioned checks bore the endorsement "Account No. 2" when issued, and this finding has ample support in the evidence. However, this finding is not decisive or necessary in determining the issue here. No notice was given the creditors, either of a proposed agreement authorizing the trustee to sell or of any sale. The importance of notice has long been recognized, and the mandatory provision of Section 58, sub. a(4) of the Bankruptcy Act, 11 U.S.C.A. § 94, sub. a(4) shows that it is absolutely essential. The necessity of notice is the same whether there is to be a public auction or private sale, or whether the sale is to be subject to liens or free therefrom. Remington on Bankruptcy, Vol. 6, section 2539; Allgair v. Wm. F. Fisher & Co., 3 Cir., 143 F. 962; In re Nevada-Utah Mines & Smelters Corp., D.C., 198 F. 497; In re Lake Champlain Pulp & Paper Corp., D.C., 20 F.2d 425. The amendment of 1938 provides that the court "may, upon cause shown, shorten such time or order an immediate sale without notice." This doubtless was intended to apply to unusual situations and in instances where property is of a perishable nature. Some considerable time after the execution of the agreement the referee made the order purporting to approve it. The order was based upon the agreement alone. No cause was shown why notice should not be given the creditors and, indeed, it would seem from the situation as presented by the evidence that there was ample time in which to give notice. Here it is sought to charge the estate with all of the deficit on the sale, although it received no value from the sale. It is pointed out in Remington on Bankruptcy, vol. 6, section 2539, that notice is not required where a pledgee sells or where the trustee acts for the pledgees in making the sale. If the trustee herein under this agreement acted as the agent of the pledgee, the estate can not be held to respond for any loss.

■■ The agreement is silent as to who should pay the expenses, but it seems to me that the proofs show that the parties contemplated that they should be borne by the bank. It certainly was expected that the security would be ample to pay all the expenses of the sale. If the bank itself directly had made the sale, it would have been

obligated to pay the expenses. The agreement provides that these "first be deducted" before any other payments. It provides that the bank loan money to finance the liquidation and control the extension of credit. The bank retained control over the custody of the wine and though the agreement does not so provide its officers exercised authority over its disposition and refused the approval of offers to purchase at a price much larger than that subsequently obtained. "Account No. 2" was set up separately to carry the wine transactions. Certain loans from "Account No. 1" were placed in "Account No. 2" under agreement by the bank that they would be replaced. There are other proofs going to show this intention. Such proofs also show the intention that the trustee should act as the agent of the bank in making the sale. Ordinarily the expenses of sale of property are paid out of the proceeds of the particular property, and they are properly chargeable against it, and there may be situations under which a court would be justified in charging losses in the sale of particular property against the general estate. But the bankruptcy court is a court of equity and upon equitable principles under all of the facts shown in this case, it seems to me the bank should bear the expense of the sale. The sale primarily was for the benefit of the bank. It does not appear that any loss was sustained by reason of the acts of the trustee, and, as pointed out hereinbefore, the bank assumed general control of the sale.

It is contended by the bank that, in the absence of evidence of loss either to the trustee or to the bankrupt's estate by reason of the charging of the aforesaid checks, the trustee can not recover. The master found that each of such checks was drawn by the trustee to pay an obligation of the trustee; that there is no evidence that the proceeds of these checks were paid to any persons other than the payees named therein or their transferees; and that the account of the trustee was not charged with any sum in excess of the amount stated in said checks respectively. It is contended that under these circumstances no loss is shown. If the trustee acted without authority, as I find he did, there plainly was a loss to the estate. It is also urged by the bank that the acquiescence or the failure of the trustee to raise any objection to the withdrawal of the expense moneys from Account No. 1 estopped him. Acquiescence on his part is not material for the reasons hereinbefore given. It is further urged by the bank that the master directed judgment on an issue which was not before him for determination. I see no merit in this claim. While other relief is sought, the petition asks that the bank "restore to 'Account No. 1' the sum of $4,340.36 which it unlawfully withdrew from said account." The order of the master directs such restoration.

It is further contended by the bank that the issue on which the master bases his decision is one that could not be determined in bankruptcy court in summary proceedings. No merit is seen in this contention. The moneys claimed were moneys in the bankrupt's estate. They are found to have been unlawfully taken from the possession of the trustee. It is clear under the statute and decisions that these moneys may be recovered in summary proceedings as here. Section 2, sub. a, par. (7), 11 U.S.C.A. § 11, sub. a (7). In re Kolb Carton Co., 2 Cir., 9 F.2d 706; Gamble v. Daniel, 8 Cir., 39 F.2d 447. Harris v. Avery Brundage Co., 305 U.S. 160, 59 S.Ct. 131, 83 L.Ed. 100; Taubel-Scott-Kitzmiller Co., Inc. v. Fox, 264 U.S. 426, 44 S.Ct. 396, 68 L.Ed. 770; · Section 67 of the Bankruptcy Act, as extended by the so-called Chandler Act of 1938, 11 U.S.C.A. § 107. The test as between the right to proceed through summary proceedings and by plenary action in so far as pertinent here is whether the property had come into the possession of the trustee. If so, he had the right to bring summary proceedings to gain possession of it. The bankruptcy court having had possession of the moneys in question had jurisdiction to determine all questions respecting it. R. L. Blaffer & Co. v. Commissioner of Internal Revenue, 5 Cir., 103 F.2d 487, and cases cited. In re Dayton Hotel, 7 Cir., 110 F.2d 459. This last-mentioned case is quite comparable to the one in suit.

The bank waived jurisdiction by not raising the question until the conclusion of the hearing. Page v. Arkansas Natural Gas Co., 286 U.S. 269, 52 S.Ct. 507, 76 L. Ed. 1096. First National Bank v. Fox, 6 Cir., 111 F.2d 810, 811. McDonald v. Plymouth County Trust Co., 286 U.S. 263, 52 S. Ct. 505, 76 L.Ed. 1093.

The order of the referee is affirmed.